## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TARA MCCALVIN, GHANI SMITH, HOLLI WISE, JAMES C. DEVIESE and THERESA DEVIESE<br><br>*on behalf of themselves and all others similarly situated*<br>　　　　　　　　　　　　Plaintiffs,<br><br>　　　vs.<br><br>CONDOR HOLDCO SECURITIZATION TRUST, CONDOR ASSETCO SECURITIZATION TRUST & CONDOR RECOVERY SECURITIZATION TRUST,<br>　　　　　　　　　　　　Defendants. | CLASS ACTION<br><br><br><br>CIVIL ACTION NO. 17-cv-01350(TJS) |

---

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, PRELIMINARY DETERMINATION ON CLASS CERTIFICATION, AND FOR ISSUANCE OF CLASS NOTICE (UNCONTESTED)**

**PROPOSED FORM OF ORDER OF PRELIMINARY APPROVAL, PRELIMINARY DETERMINATION OF CLASS CERTIFICATION, AND APPROVING NOTICE**

**MEMORANDUM, CERTIFICATIONS AND EXHIBITS IN SUPPORT OF THE MOTION**

---

# TABLE OF CONTENTS

**PAGE**

I.  MATTER BEFORE THE COURT ................................................................... 1

II.  NATURE OF THE CASE ............................................................................... 2

  A.  The UCC's Notice Requirements ............................................................. 2

  B.  Defendants' Defective Notices................................................................. 3

    1.  The Notice does not Properly or Accurately Identify the Secured Party. ................... 5

    2.  The Notice Fails to State the Method, Time, and Place of Intended Disposition. ....... 5

    3.  The Notice Fails to State the Right to an Accounting. ................................. 6

  C.  The UCC Provides a Uniform Formula for Statutory Damages........................................ 6

III.  HISTORY OF THE LITIGATION AND THE LEAD-UP TO SETTLEMENT............... 7

IV.  THE TERMS OF THE SETTLEMENT........................................................... 9

V.  ELEMENTS FOR CLASS CERTIFICATION ARE MET PRELIMINARILY.............. 10

  A.  Standard for a Preliminary Determination of Class Certification ................................... 11

  B.  The Proposed Class Meets the Requirements for Certification ....................................... 12

    1.  The Class is Sufficiently Numerous ................................................... 12

    2.  Rule 23(a)(2) – Commonality is Met Here................................................. 12

    3.  Rule 23(a)(3) – Plaintiffs' Claims are Typical to the Class ....................................... 13

    4.  Rule 23(a)(4) – Plaintiffs and Counsel are Adequate................................................. 14

    5.  Rule 23(b)(3) -- Common Questions of Law or Fact Predominate........................... 18

    6.  Rule 23(b)(3) -- Class Action is Superior to Other Available Methods to Resolve This Controversy................................................................................. 20

    7.  Rule 23(g) Factors ......................................................................... 20

i

VI.    THE CLASS SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL ................................................................................. 21

A.  Standards for Preliminary Approval ................................................................. 21

B.  Preliminary Approval Should be Granted ........................................................ 22

1.    The Settlement was Reached After Arms-Length Negotiations ................................ 22

2.    The Settlement is Fair and Contains No Deficiencies .................................................. 23

3.    The Settlement is Within the Range of Reasonableness ............................................ 24

4.    Class Counsel Recommends the Settlement................................................................ 25

VII.    CLASS NOTICE ..................................................................................................... 27

VIII.    CONCLUSION........................................................................................................ 28

## <u>TABLE OF AUTHORITIES</u>

<div align="right"><u>PAGE</u></div>

**Cases**

*Allen v. Holiday Universal*,
  249 F.R.D. 166 (E.D. Pa. 2008)........................................................................... 15, 17

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994)...................................................................................... 12

*Boone v. City of Philadelphia*,
  668 F. Supp. 2d 693 (E.D. Pa. 2009) .................................................................... 24

*Boulevard Bank v. Malott*,
  397 S.W.3d 458 (Mo. Ct. App. 2013).................................................................... 5

*Continental Ins. Co. v. Schneider, Inc.*,
  873 A.2d 1286 (Pa. 2005) ...................................................................................... 6

*Cosgrove v. Citizens Auto. Fin. Inc.*,
  No. 09-1095, 2011 WL 3740809  (E.D. Pa. Aug. 25, 2011) ........................... passim

*Cubler v. Trumark Fin. Credit Union*,
  83 A.3d 235 (Pa. Super. 2013).................................................................... 3, 5, 6, 19

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010).................................................................................... 22

*Gates v. Rohm and Haas Co.*,
  248 F.R.D. 434 (E.D. Pa. 2008) ................................................................ 11, 15, 22

*Gibbs v. Titleman*,
  502 F.2d 1107 (3d Cir. 1974).................................................................................. 2

*Harlan v. Transworld Sys., Inc.*,
  302 F.R.D. 319 (E.D. Pa. 2014).................................................................. 15, 19, 21

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
  263 F.R.D. 226 (E.D. Pa. 2009)............................................................................. 28

*In re Cmty. Bank of Northern Va.*,
  418 F.3d 277 (3d Cir. 2005).................................................................................... 18

*In re Cmty. Bank of Northern Va.*,
  622 F.3d. 275 (3d Cir. 2010).................................................................................. 14

*In re Fasteners Antitr. Litig.*,
  No. 08–md–1912, 2014 WL 285076 (E.D. Pa. Jan. 24, 2014) ................................................ 22

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .................................................................................... 22, 24

*In re Ins. Brokerage Antitr. Litig.*,
  579 F.3d 241 (3d Cir. 2009) ........................................................................................ 12

*In re Massaquoi*,
  412 B.R. 702 (Bkrtcy. E.D. Pa. 2008) .......................................................................... 3

*In re NFL Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ........................................................................................ 13

*In re Prudential Ins. Co. of Am. Sales Prac. Litig.*,
  148 F.3d 283 (3d Cir. 1998) .................................................................................... 14, 20

*Lawsky v. Condor Capital Corp.*,
  154 F. Supp. 3d 9 (S.D.N.Y. 2015) ............................................................................... 4

*McCall v. Drive Fin. Serv.*,
  2009 WL 8712847 (Phila. CCP, Apr. 10, 2009) ............................................................ 19

*McCall v. Drive Fin. Servs., L.P.*,
  236 F.R.D. 246 (E.D. Pa. 2006) ........................................................................ 12, 14, 19

*Menichini v. Grant*,
  995 F.2d 1224 (3d Cir. 1993) ........................................................................................ 6

*Montgomery Cnty., Pa. ex rel. Becker v. MERSCORP, Inc.*,
  298 F.R.D. 202 (E.D. Pa. 2014) .................................................................................... 11

*Nat'l Football League Players Concussion Inj. Litig.*,
  775 F. 3d 570 (3d Cir. 2014) ................................................................................... 2, 11

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ........................................................................................ 12

*Oslan v. Collection Bureau of Hudson Valley*,
  206 F.R.D. 109 (E.D. Pa. 2002) .................................................................................... 19

*Perry v. FleetBoston Fin. Corp.*,
  229 F.R.D. 105 (E.D. Pa. 2005) .................................................................................... 27

*Pfeifer v. Wawa, Inc.*,
  2018 WL 2057466 (E.D. Pa. May 1, 2018) .......................................................................... 11

*Reyes v. Netdeposit, LLC*,
  802 F.3d 469 (3d Cir. 2015) ...................................................................................................... 18

*Rodriguez v. Nat'l City Bank*,
  726 F.3d 372 (3d Cir. 2013) ...................................................................................................... 11

*Serrano v. Sterling Testing Sys., Inc.*,
  711 F. Supp. 2d 402 (E.D. Pa. 2010) ..................................................................................... 20

*Sheinberg v. Sorensen*,
  606 F.3d 130 (3d Cir. 2010) ............................................................................................. 14, 20

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ...................................................................................................... 12

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273, 327-28 (3d Cir. 2011) (en banc) ........................................................ 7, 19, 25

*Wachtel v. Guardian Life Ins. Co. of Am.*,
  453 F.3d 179  (3d Cir. 2006) ...................................................................................................... 28

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................................................................ 12

*Weiss v. York Hospital*,
  745 F.2d 786 (3d Cir. 1984) ...................................................................................................... 12

## Statutes

13 Pa. C.S. § 9611 ............................................................................................................................ 3

13 Pa. C.S. § 9611(c)(1) ................................................................................................................... 9

13 Pa. C.S. § 9611(c)(2) ................................................................................................................... 9

13 Pa. C.S. § 9613(1)(i) ................................................................................................................... 5

13 Pa. C.S. § 9613(1)(iii) ................................................................................................................. 5

13 Pa. C.S. § 9613(1)(iv) ................................................................................................................. 6

13 Pa. C.S. § 9613(1)(v) ................................................................................................................... 5

13 Pa. C.S. § 9614(1) ................................................................................................................... 3, 5

13 Pa. C.S. § 9614(1)(i) .................................................................................. 5, 6

13 Pa. C.S. § 9625(c) .................................................................................. 6, 18

**Other Authorities**

JAMES WHITE & ROBERT SUMMERS, UNIFORM COMMERCIAL CODE 34-12 (5th ed., 2002) ........... 3

MANUAL FOR COMPLEX LITIGATION, Fourth (2004) ("MCL") §§ 21.632 ................................... 22

**Rules**

Fed. R. Civ. P. 23 ....................................................................................... passim

Fed. R. Civ. P. 23(a) ................................................................................ 11, 17, 29

Fed. R. Civ. P. 23(a)(1) ..................................................................................... 12

Fed. R. Civ. P. 23(a)(2) ..................................................................................... 12

Fed. R. Civ. P. 23(a)(3) ..................................................................................... 13

Fed. R. Civ. P. 23(a)(4) ..................................................................................... 14

Fed. R. Civ. P. 23(b) ......................................................................................... 11

Fed. R. Civ. P. 23(b)(3) ............................................................................ 12, 18, 20, 29

Fed. R. Civ. P. 23(c) ......................................................................................... 28

Fed. R. Civ. P. 23(c)(2) ..................................................................................... 27

Fed. R. Civ. P. 23(e) ...................................................................................... 21, 28

Fed. R. Civ. P. 23(g) ...................................................................................... 14, 20

Fed. R. Civ. P. 23(g)(1)(B) ................................................................................. 14

Fed. R. Civ. P. 23(g)(1)(C) ................................................................................. 20

Fed. R. Civ. P. 30(b)(6) ....................................................................................... 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TARA MCCALVIN, GHANI SMITH, HOLLI WISE, JAMES C. DEVIESE and THERESA DEVIESE <br><br> *on behalf of themselves and all others similarly situated* <br>                       Plaintiffs, <br><br>      vs. <br><br> CONDOR HOLDCO SECURITIZATION TRUST, CONDOR ASSETCO SECURITIZATION TRUST & CONDOR RECOVERY SECURITIZATION TRUST, <br>                     Defendants. | CLASS ACTION <br><br><br> CIVIL ACTION NO. 17-cv-01350(TJS) |

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT,
PRELIMINARY DETERMINATION ON CLASS CERTIFICATION,
<u>AND FOR ISSUANCE OF CLASS NOTICE</u>**

Plaintiffs Tara Mccalvin, Ghani Smith, Holli Wise, James C. Deviese, and Teresa Deviese move the Court under Fed. R. Civ. P. 23(e) for preliminary approval of a class settlement, preliminary determination of class certification, and to approve issuance of class notice.

1. The proposed Class is defined as all persons in the United States:

     a.     who financed a vehicle primarily for consumer use, whose consumer loan contract or installment sales contract was assigned to the Condor Trusts or one of them;

     b.     from whom the Condor Trusts, or one of them of their designee, repossessed the financed vehicle, or ordered it repossessed;

     c.     who were sent a Notice of Our Plan to Sell Property from the Condor Trusts or similar document which did not:

(1) precisely state the method of disposition, *viz.,* whether a public auction or private sale;

(2) list the time and place of any public sale of the vehicle;

(3) describe the precise legal name and address of the secured party; or

(4) state that the borrower has the right to an accounting;

d.      or, were sent no notice at all;

e.      from November 23, 2015 through March 28, 2018.

2.   Plaintiffs submit that all of the requirements of Fed. R. Civ. P. 23(e) are met.  In support of this Motion, Plaintiffs incorporate the within Memorandum of Law with exhibits and Certifications of counsel.

3.   Plaintiffs further submit that this settlement is fair, reasonable, and adequate, was reached after protracted arms-length negotiations, and is in the best interest of the Class. Defendants do not oppose, but rather join in the relief sought in this motion.

WHEREFORE, and for the reasons set forth more fully in the within Memorandum of Law, a settlement Class should be preliminarily approved, a preliminary determination should be made as to class certification, and notice should issue to the Class.


Date: <u>June 29, 2018</u>          <u>*/s/ Cary L. Flitter*</u>
CARY L. FLITTER
ANDREW M. MILZ
JODY THOMAS LÓPEZ-JACOBS
**FLITTER MILZ, P.C.**
450 N. Narberth Ave., Suite 101
Narberth, PA 19072
(610) 822-0782

SETH R. LESSER (admitted *Pro Hac Vice*)
MICHAEL H. REED (admitted *Pro Hac Vice*)
**KLAFTER OLSEN & LESSER LLP**
Two International Drive, Suite 350
Rye Brook, NY 10573
Phone: (914) 934-9200
Facsimile: (914) 934-9220

ROBERT MURPHY (*Pro Hac Vice Pending*)
**MURPHY LAW FIRM**
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
Phone: (954) 763-8660

ROBERT E. DUFF (*Pro Hac Vice Pending*)
**THE LAW OFFICE OF ROBERT E. DUFF**
P.O. Box 7251
Fishers, IN 46037
Phone: 800-817-0461

**Attorneys for Plaintiffs and the Class**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TARA MCCALVIN, GHANI SMITH, HOLLI WISE, JAMES C. DEVIESE and THERESA DEVIESE | CLASS ACTION |
| *on behalf of themselves and all others similarly situated* <div align="right">Plaintiffs,</div> | |
| vs. | CIVIL ACTION NO. 17-cv-01350(TJS) |
| CONDOR HOLDCO SECURITIZATION TRUST, CONDOR ASSETCO SECURITIZATION TRUST & CONDOR RECOVERY SECURITIZATION TRUST, <div align="right">Defendants.</div> | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS SETTLEMENT, PRELIMINARY**
**DETERMINATION ON CLASS CERTIFICATION,**
**AND FOR ISSUANCE OF CLASS NOTICE**

## I.     MATTER BEFORE THE COURT

Plaintiffs Tara Mccalvin, Ghani Smith, Holli Wise, James C. Deviese, and Teresa Deviese move under Fed. R. Civ. P. 23 for preliminary approval of a class settlement and for a preliminary determination on class certification as to a nationwide class settlement reached in this matter.

The settlement was reached after months of litigation, written discovery, depositions and extensive arms-length negotiations including two days of mediation.  The settlement terms are fair, reasonable, adequate, and in the best interests of the Class.  The Settlement Agreement, attached hereto as Exhibit "1," reflects an excellent result including a cash fund of $5.7 Million, valuable equitable-type relief in correction of consumer credit reports, and the waiver of over $14 Million in auto loan deficiency balances claimed due by Defendants.  If approved as proposed, each Class Member stands to receive (after approved Class Counsel fees, expenses and administrator cost), a

net cash payment of about $1,150 plus the credit report correction, and complete waiver of any deficiency balance alleged due.  Plaintiffs and their counsel respectfully would submit that this is an excellent result.

A copy of the proposed Order for Preliminary Approval of Class Settlement, Preliminary Determination, and Directing Issuance of Notice to the Class is filed herewith as Exhibit "2."  The proposed Order establishes certain dates and the method for mailing notice to the Class, the procedure and timing for administration and the filing of objections to the settlement, or requests for exclusion by members of the Class.  The proposed Class Notice to be mailed to the members of the Class is attached as Exhibit "C" to the Settlement Agreement (Ex. "1" hereto).

For the reasons set forth more fully herein, Plaintiffs submit that all the requirements of Rule 23 are met; that class settlement should be preliminarily approved, a preliminary determination regarding class certification for settlement purposes should be made, and that Notice should issue to the Class.  *See Nat'l Football League Players Concussion Inj. Litig.*, 775 F. 3d 570, 583-84 (3d Cir. 2014) (instructing district court to make a "preliminary determination" on class certification rather a preliminary or conditional class certification).

## II.  <u>NATURE OF THE CASE</u>

### A.  The UCC's Notice Requirements

This class action is brought under the Uniform Commercial Code ("UCC"), which provides certain protections for consumer borrowers when their vehicles are repossessed.  Non-judicial ("self-help") vehicle repossession allows a secured creditor to take back a borrower's vehicle upon default with no writ or oversight from any court.  This leaves the consumer vulnerable to abuses in the practice of auto repossession and overreaching by lenders and their repossession agents.  *See Gibbs v. Titleman*, 502 F.2d 1107 (3d Cir. 1974).

The UCC largely reflects the statutory requirements of each state.  Although various state UCC enactments have some variations, to facilitate ease of reference in this Motion, Plaintiff will refer to the Pennsylvania UCC (unless otherwise noted), which mirrors the model UCC in all substantive respects.

Article 9 of the Pennsylvania UCC (referred to in Pennsylvania as a "division") requires secured parties to provide consumers with specific, detailed notices after repossession, but before exposing the collateral to sale. 13 Pa. C.S. § 9611.  *Cubler v. Trumark Fin. Credit Union*, 83 A.3d 235 (Pa. Super. 2013); *Cosgrove v. Citizens Auto. Fin. Inc.*, No. 09-1095, 2011 WL 3740809, *1 (E.D. Pa. Aug. 25, 2011).  The notice serves practical purposes; it informs the borrower about, *inter alia*, whether the disposition will be by public or private sale, how much is required to redeem the collateral, and where and when the collateral will be sold.  *Cubler*, 83 A.3d at 236 n.1; JAMES WHITE & ROBERT SUMMERS, UNIFORM COMMERCIAL CODE 34-12 (5th ed., 2002); *see also In re Massaquoi*, 412 B.R. 702, 708 (Bkrtcy. E.D. Pa. 2008) (stating that the "notice requirement is aimed at protecting the debtor").  The notice is also supposed to "describe the secured party."  *See* 13 Pa. C.S. § 9614(1).

### B.  Defendants' Defective Notices

Plaintiffs Tara Mccalvin, Ghani Smith, Holli Wise, James C. Deviese and Teresa Deviese ("Representative Plaintiffs") seek to represent a class of similarly situated consumers around the country (collectively referred to as the "Class") who received a form notice of repossession from Defendants, Condor Holdco Securitization Trust, Condor Assetco Securitization Trust and Condor Recovery Securitization Trust (collectively, the "Trusts").

Representative Plaintiffs and the putative members of the Class each signed a Retail Sales Installment Agreement ("RISC") that gave a security interest in their vehicle to Defendant Condor

Capital Corporation.[1] (See Ex. "3," RISCs of Mccalvin & Smith).  The security interest was ultimately assigned to one or more of the Trusts, which were created for the purpose of acquiring and owning a portfolio of automobile loans initially belonging to Condor Capital Corporation.

When a borrower defaults on a vehicle loan whose security interest is held by one or more of the Trusts, the vehicle is repossessed and the borrower is sent a post-repossession notice ("Notice").  (Ex. "4," Stephanie Jimenez Dep. at pp. 58:25–60:02).[2]  During the life of the vehicle loan, the loan can switch hands among the Trusts. But upon the occurrence of a modification or repossession, the loan moves to Condor AssetCo Securitization Trust, who becomes the secured party. (Id.).  According to Plaintiffs, the Trusts' Notices were defective, in at least one—and in some cases three—different ways: (1) they failed to properly and accurately identify the secured party; (2) they failed to state the method, time, and place of intended disposition; and (3) they failed to state that the borrower has a right to an accounting.

The post-repossession notices in issue in this case were all prepared and sent by First Associates, Inc. of San Diego, acting as the loan servicer for the Trusts that held the paper.  The notices in issue were all issued in or after February, 2016. (Ex. "4," Jimenez Dep. at pp. 42:25-43:1-4.  This date is also significant because, with the recency of the Notices challenged, there are no statute of limitations issues in any of the states where Class Members reside.

---

[1]     Condor Capital Corporation provided subprime auto finance loans.  On May 13, 2014, a federal district court in the Southern District of New York placed Condor Capital Corporation under a receivership at the request of the New York State Department of Financial Services ("DFS").  *See Lawsky v. Condor Capital Corp.*, 154 F. Supp. 3d 9 (S.D.N.Y. 2015).  On December 22, 2014, DFS, Condor, and Condor's owner, Stephen Baron, entered into a final consent judgment requiring Condor to pay a $3 million civil penalty and make restitution to its customers.  *Id.* at 12.  During the course of the receivership, the receiver sold off Condor's loans, including to an entity that later transferred the loans it purchased to the Trusts.

[2]     Ms. Jimenez was the designated Rule 30(b)(6) deposition witness for the Trusts.  Ms. Jimenez is actually employed by First Associates, Inc., the loan servicer hired by the Trusts to handle management of the vehicle loan portfolio, including repossession and post-repossession notice to borrowers.  (Ex. "4," Jimenez Dep. at pp. 11:04–25, 15:15–21, 59:21–60:11).

**1.   The Notice Does Not Properly or Accurately Identify the Secured Party.**

The UCC explains that a post-repossession notice is sufficient if it, among other things, "describes the debtor and the secured party." 13 Pa. C.S. § 9613(1)(i), (applicable by the provisions of § 9614(1)).

Reading the notice, it would appear that the secured party is Condor Securitization Trust, inasmuch as its name, address, and phone number are listed on the letter.  (See id.).  However, Condor Securitization Trust is not a legal entity (Ex. "6," Trusts' Ans. to 2nd Set of Interogs., ¶¶ 3–5).   According to the Trusts' corporate designee, Stephanie Jimenez, the label Condor Securitization Trust was merely an umbrella branding term used by the Trusts' loan servicer, First Associates. (Ex. "4," Jimenez Dep. at pp. 21:21–25, 22:21–25).

The Trusts have taken the position that "Condor Securitization Trust" adequately identifies the secured party and actually is a convenience to the borrower by providing one central name or number to contact.  The Trusts assert that the naming issue would cause little, if any, confusion.  Settlement resolves this thorny point of dispute.

**2.   The Notice Fails to State the Method, Time, and Place of Intended Disposition.**

The Trusts' Notice also fails to "state[] the method of intended disposition" (that is, a public auction or a private sale) as the Code specifically requires.  See 13 Pa. C.S. § 9614(1)(i), incorporating § 9613(1)(iii).  Nor does it state "the time and place of [the] public disposition or the time after which any other disposition is to be made."  13 Pa. C.S. § 9613(1)(v).  Instead, the letter states only that the vehicle will be sold "at an auction sale."  (See Ex. "5," Repossession Notices).

The UCC requires that the secured party's post-repossession notice state how, when, and where the vehicle will be sold.  *Cubler*, 83 A.3d at 236 n.1; *Boulevard Bank v. Malott*, 397 S.W.3d 458, 463–64 (Mo. Ct. App. 2013) (notice violated UCC where it stated vehicle would be sold at

either a public or a private sale) "Public and private sales of collateral are significantly different methods of disposition, and are subject to materially different notice requirements." *Id.*[3]

### 3. The Notice Fails to State the Right to an Accounting.

Finally, the Trusts' Notice also fails to "state[] that the debtor is entitled to an accounting of the unpaid indebtedness," as the Code specifically requires. See 13 Pa. C.S. § 9614(1)(i), incorporating § 9613(1)(iv); *See Cubler*, 83 A.2d 236, n.1 (listing right to an accounting as a required disclosure). As relevant here, the form Notice sent to Plaintiff Wise failed to disclose the consumer's right to an accounting. (Ex. "5," Repossession Notices). This omission requires no other evidence than the Notice itself, and therefore easily lends itself to class-wide resolution.

### C. The UCC Provides a Uniform Formula for Statutory Damages

Plaintiffs and the putative class are entitled to uniform statutory damages as a result of the Trusts' failure to comply with Article 9 of the UCC. 13 Pa C.S. § 9625(c) provides:

> **Persons entitled to recover damages; statutory damages in consumer-goods transaction.** If the collateral is consumer goods, a person that was a debtor or a secondary obligator at the time a secured party failed to comply with this chapter may recover for that failure in any event an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price.

In *Cubler*, the Superior Court recognized that the Code provides this formula for minimum damages in a consumer transaction in recognition of the inherent difficulty of a borrower's proofs resulting from a creditor's non-compliance. 83 A.3d at 241–42.

The proposed class settlement covers consumers whose vehicle was repossessed by the Trusts in some 40 states nationwide and, in a minority of these states, there are non-uniform

---

[3]     The UCC decisions of sister jurisdictions are given substantial deference as "one of the goals of uniform laws such as the UCC is uniformity of application." *Continental Ins. Co. v. Schneider, Inc.*, 873 A.2d 1286, 1294, n.10 (Pa. 2005); *accord Menichini v. Grant*, 995 F.2d 1224, 1229 (3d Cir. 1993).

amendments to the UCC statutory damages provision, such as a lower formula. Inasmuch as there could be colorable claims for these Class Members as to available statutory damages or non-statutory damages or under other theories (such as unjust enrichment), the non-uniform UCC provisions do not materially impact this Court's analysis for the propriety of this Settlement. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 327-28 (3d Cir. 2011) (en banc). Further, the non-uniform states form but a very small portion of the Class because the great majority of the 2890 secured obligations are from jurisdictions that have adopted the uniform rules. For example, only 192 are from Ohio and only 196 are from Michigan, the two largest non-uniform states.

III.     **HISTORY OF THE LITIGATION AND THE LEAD-UP TO SETTLEMENT**

This case was filed on March 24, 2017. (ECF 1). It was amended a short time later to a class action against the Trusts. (ECF 2). A Second Amended Complaint was filed on January 19, 2018 (ECF 59) adding Ghani Smith of New York as a class representative. On May 16, 2018 (ECF 79) a Third Amended Complaint was filed. The Third Amended Complaint added Holli Wise, (a Pennsylvania resident), James and Theresa Deviese, (Indiana residents), while dropping Abdullah Ansari of New York as a class representative and dropping the defunct Condor Capital Corporation as a party defendant.[4] The Third Amended Complaint also sought relief for a class of consumers nationwide.

The parties engaged in class discovery, during which the Trusts produced thousands of detailed documents, and spreadsheets. Plaintiffs' counsel reviewed and catalogued the documents and prepared their own spreadsheet, confirming the Defendants' data. (See Ex. "7," Certification of Cary L. Flitter ¶ 32). The parties took depositions in Philadelphia, New York City (twice) and

---

[4]     Discovery here revealed that Mr. Ansari's loan, originated with Condor Capital Corporation, was sold by the receiver not to the Defendant Trust(s), but to an unrelated entity called CFAM. Thus, Mr. Ansari had no viable claim against the Trusts. Discovery also revealed that Condor Capital Corporation is no longer writing, servicing or collecting on loans, and is practically defunct.

San Diego.  After the conclusion of class discovery, Plaintiffs moved for class certification, and Defendants opposed.

During class discovery, counsel for the parties had a series of negotiations over the prospect of a class settlement for consumers in Pennsylvania and New York, the two states pled in the Amended Complaint and Second Amended Complaint.  It was understood that any settlement would have three components: cash distribution for Class Members, forgiveness of any deficiency balances, and credit report correction.  This was the approach in a very similar, prior UCC repossession case in this district, *Cosgrove v. Citizens Auto Fin. Co.*, 2011 WL 3740809 (E.D. Pa. Aug. 25, 2011) which yielded a similar classwide settlement that Judge Schiller found worthy of approval.

In January 2017, James and Theresa Deviese through counsel, Robert W. Murphy and Robert Duff, filed a similar case against the Trusts in Indiana arising from the claimed wrongful repossession of their vehicle.  That case was removed to the U.S. District Court Northern District of Indiana at Docket No. 17-cv-00168-JD-MGG ("*Deviese* Case").  Ultimately, the *Deviese* Case and this *Mccalvin* case proceeded on a comparable track and discovery was informally coordinated.  For example, the deposition of the Trusts' designated witness was coordinated and taken by plaintiffs' counsel in both this case (by Flitter) and the Deviese action (by Murphy) in San Diego.

Counsel for the plaintiffs in both cases participated in the mediations.  The Trusts expressed interest in resolving these claims for consumers in all states where the Trusts repossessed vehicles.  Upon reaching a settlement in principle, counsel agreed to effectively merge the *Deviese* Case into this case and a Third Amended Complaint was filed on May 16, 2018 (ECF 79) with the Devieses

as co-plaintiffs.  Upon preliminary approval here, the Devieses will discontinue their Indiana action.  (Sett. Agrmt, ¶ 2.16.).[5]

The parties held a day-long mediation session at JAMS before the Hon. Diane Welsh, USMJ (ret.) in November 2017, which did not result in a settlement.  Counsel reported back to the Court and continued with class motion practice.  The day before oral argument on Plaintiffs' Motion for Class Certification, the parties held another day-long mediation before Judge Welsh on March 27, 2018. This mediation proved successful, and the parties have carefully documented the class settlement which covers consumers nationwide.

After comparison of Defendant's disclosed class list with Plaintiff's compiled class list, the parties agreed that there are approximately 2,890 individual loan files (secured obligations) involved.  In addition, the Trusts have advised that there are some 355 of those loans with co-borrowers.  The class size is approximately 3,245 Class Members, as each borrower and any secondary obligor has rights and is entitled to notice.  *See* 13 Pa. C.S. § 9611(c)(1), (2).

The written Settlement Agreement (Ex. "1") has been executed.  Plaintiffs now ask the Court to preliminarily approve the class settlement, make a preliminary determination on class certification, and allow issuance of notice to the Class for the Class Members' consideration.

## IV.   THE TERMS OF THE SETTLEMENT

The primary terms of the class-wide settlement are as follows:

1.      Defendants will pay $5,700,000.00 into a settlement fund to be held at PNC Bank, which will be used to pay Class Members, costs of settlement administration, and approved Class Counsel fees and costs.  (See Sett. Agreement, Ex. "1" ¶ 2.06).

---

[5]      The Court may recall the colloquy with Mr. Murphy at the appearance in open court on March 28, 2018, confirming that his clients, the Devieses, approved of the global settlement now being presented.

2.      Defendants will advise all Consumer Reporting Agencies to whom it reports <u>to delete entirely</u> the applicable Condor Trusts tradeline from the Class Members' consumer credit reports. (Sett. Agreement ¶ 2.09).

3.      Defendants will <u>waive and eliminate over $14 Million in auto deficiency claims</u> on Class Member Auto Loans, unless a Class Member doesn't want the debt forgiveness for some reason. (Sett. Agreement ¶¶ 2.10-2.13, 5.02).  The average debt forgiveness per Class Member with a deficiency balance is approximately $8,046.00.

As set forth more fully below, Class Counsel believes the terms of the settlement to be very favorable to the Class.  In some ways, this settlement represents a better overall result than could have been achieved through completely successful litigation when considering the valuable equitable type relief in the form of credit report correction and the waiver of auto loan deficiency balances in their entirety.

## V.      ELEMENTS FOR CLASS CERTIFICATION ARE MET - PRELIMINARILY

Plaintiffs now ask the Court to make a preliminary determination that a nationwide settlement class that will resolve all Class Member claims against the Trusts can proceed to a final approval.  Plaintiffs Tara Mccalvin, Ghani Smith, Holli Wise, James C. Deviese and Theresa Deviese will serve as representatives of the Class.

The Class is defined as all persons in the United States:

(a) who financed a vehicle primarily for consumer use, whose consumer loan contract or installment sales contract was assigned to the Condor Trusts or one of them;

(b) from whom the Condor Trusts, or one of them or their designee, repossessed the financed vehicle, or ordered it repossessed;

10

(c) who were sent a Notice of Our Plan to Sell Property from the Condor Trusts or similar document which did not:

    (1)  precisely state the method of disposition, *viz.,* whether a public auction or private sale;

    (2)  list the time and place of any public sale of the vehicle;

    (3) describe the precise legal name and address of the secured party; or

    (4) state that the borrower has the right to an accounting;

(d) or, who were sent no notice at all;

(e) from November 23, 2015 through March 28, 2018.

### A.  Standard for a Preliminary Determination of Class Certification

At this stage, the Court is to make "a 'preliminary determination' on class action certification for purposes of issuing notices of settlement . . . ."  *In re NFL Players Concussion Injury Litig.*, 775 F.3d at 586.  The "preliminary approval decision is not a commitment to approve the final settlement," but rather to "determine if there are any obvious deficiencies and whether the settlement falls within the range of reason." *Pfeifer v. Wawa, Inc.*, 2018 WL 2057466 *2 (E.D. Pa. May 1, 2018) (*quoting Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 438-39 (E.D. Pa. 2008)) (internal quotations omitted).  After Notice has issued, at the final approval stage, the district court must apply a rigorous analysis of the Rule 23 elements, while mindful of the strong judicial policy in favor of class action settlement. *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir. 2013).

The four Rule 23(a) requirements consist of "numerosity," "commonality," "typicality," and "adequate representation." *Montgomery Cnty., Pa. ex rel. Becker v. MERSCORP, Inc.*, 298 F.R.D. 202, 209 (E.D. Pa. 2014).  For a class ultimately to be certified, all four requirements of Rule 23(a) must be satisfied, along with one of the three categories of Rule 23(b). *Pfeifer*, 2018

WL 2057466 at *3; *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 249 (E.D. Pa. 2006).  A

preliminary determination on certification here is sought under Rule 23(b)(3), which requires that

"questions of law or fact common to class members predominate over any questions affecting only

individual members," such that "a class action is superior to other methods for fairly and efficiently

adjudicating the controversy."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011).  All

the required Rule 23 elements are met here, and a preliminary determination of such is warranted.

### B.  The Proposed Class Meets the Requirements for Certification

#### 1.  The Class is Sufficiently Numerous

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires the class to be "so numerous

that joinder of all members is impractical."  *Weiss v. York Hospital*, 745 F.2d 786, 808 (3d Cir.

1984).  Our Court of Appeals has held that generally a class of more than 40 individuals will satisfy

the numerosity requirement.  *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).

Under the terms of the settlement agreement, discovery has revealed that this case involves

approximately 2,890 secured obligations and 3,245 Class Members nationwide (including 355 co-

borrowers).  (See Ex. "1," ¶ 2.07).

#### 2.  Rule 23(a)(2) – Commonality is Met Here

The threshold commonality inquiry is whether there are any questions of fact or law that

are common to the class.  Fed. R. Civ. P. 23(a)(2).  "[C]ommonality does not require an identity

of claims or facts among class members".  *In re Ins. Brokerage Antitr. Litig.*, 579 F.3d 241, 265

(3d Cir. 2009); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir.

2001).  "Rather, the commonality requirement will be satisfied if the named plaintiffs share at least

one question of fact or law with the grievances of the prospective class."  *In re Ins. Brokerage*,

579 F.3d at 265; *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  In *Cosgrove*, this Court found

commonality readily present where the common question, as here, was "whether the [lender's repossession] notice was unreasonable under the UCC" and "how [statutory] damages are to be awarded."  2011 WL 3740809 *4.

There is more than one common question here.  There are at least three, including:

> (i)      whether Plaintiffs and the Class obtained motor vehicle financing through Retail Installment Sales Contracts or other vehicle loans that were assigned to the Trusts in which the vehicles were pledged as collateral;

> (ii)     whether the Trusts repossessed the financed vehicles or ordered them repossessed;

> (iii)    whether the Notice sent by the Trusts failed to conform to the requirements of the Uniform Commercial Code after repossessing a vehicle.

These questions are plainly common to all of the Class Members. Plaintiffs respectfully submit that the proposed Class readily meets the threshold of commonality.

### 3.  Rule 23(a)(3) – Plaintiffs' Claims are Typical to the Class

The Third Circuit has a "low threshold" for typicality.  *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016).  "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct."  *Id.*  That is why "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims."  *Id.*

Courts regularly find typicality in a form letter case where the named plaintiff's interests align with the interests of the class.  For example, in *Cosgrove*, the plaintiff sought a settlement

class based on a form repossession notice that did not include information required by the UCC. 2011 WL 3740809, at *1.  The district court found typicality satisfied because the named plaintiff suffered the same type of harm as the class based upon the same form language in the notice. *Id.* at *4; *see also McCall*, 236 F.R.D. at 250) (finding plaintiff's case "typical because he received essentially the same letter as the 203 other plaintiffs [in the putative class]").

In this case, Plaintiffs suffered harm "as a result of this same class-wide conduct that injured the absentee class members." *See In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 148 F.3d 283, 312 (3d Cir. 1998).  More specifically, Plaintiffs' claims and the Class Members' claims are identically predicated on the same facially observable deficiencies in the repossession notice (if notice was sent at all).  The Trusts' corporate designees testified that all notices sent in a given state were based on the same template.  (Ex. "4," Jimenez Dep. at p. 36:17–23).  As such, there is no difference as to the theories of liability upon which Plaintiffs and the classes proceed, inasmuch as they are based on the same template Notice.  Accordingly, typicality exists here because the Trusts' Notices—those sent to the Plaintiffs and those sent to the Class Members—all are alleged to have failed to include all statutorily required information.

### 4.  Rule 23(a)(4) – Plaintiffs and Counsel are Adequate

Rule 23(a)(4) requires Plaintiffs to provide fair and adequate protection for the interests of the class.  *In re Cmty. Bank of Northern Va.*, 622 F.3d. 275, 291–92 (3d Cir. 2010).  The inquiry addresses two factors: (1) whether Plaintiffs' counsel is qualified, experienced, and generally able to conduct the proposed litigation,[6] and (2) whether the Plaintiffs are adequate and have no

---

[6]      "Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) . . . those questions have, since 2003, been governed by Rule 23(g)." *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010).  That subsection lists several non-exclusive factors that a district court must consider in determining "counsel's ability to fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(1)(B).  For the sake of completeness, Plaintiffs touch on the adequacy factors here, as well as in a separate section *infra* titled "Rule 23(g) Factors".

interests antagonistic to those of the classes. *Allen v. Holiday Universal*, 249 F.R.D. 166, 180 (E.D. Pa. 2008); *Gates*, 248 F.R.D. at 441.  Both prongs are readily met here.

Plaintiffs are represented by counsel experienced in consumer class action litigation.  Cary L. Flitter and FLITTER MILZ, P.C. have been approved as competent counsel by this Court and others in dozens of consumer class actions.  *See, e.g.*, *Harlan v. Transworld Sys., Inc.*, 302 F.R.D. 319, 329 (E.D. Pa. 2014); *Cosgrove*, 2011 WL 3740809 *5, *9.  *See also* Flitter Cert at ¶¶ 23-24, Ex. "7" hereto.   Flitter has presented at scores of lectures and CLE's regionally and nationally for over 20 years on consumer litigation topics, including repossession practices and class action. Flitter serves on the adjunct faculty of Temple University's Beasley School of Law and Widener University Delaware Law School where he teaches consumer litigation and class action practice. He is a co-author of PENNSYLVANIA CONSUMER LAW, Geo. Bisel Publishing Co. and longstanding co-chair of the Federal Court Practice Committee of the Montgomery Bar Association.  *See id*.  A full statement of qualifications is included within the Certification of Cary L. Flitter, attached as Exhibit "7."

Andrew Milz of FLITTER MILZ, P.C. has been approved as competent counsel by Pennsylvania courts in well over two dozen consumer class actions, including UCC repossession notice class actions.  Jody Thomas López-Jacobs, admitted to the bar in 2015, served as a law clerk to the Hon. Mark A. Kearney in this district before joining FLITTER MILZ in 2017.  Class Counsel from FLITTER MILZ, P.C. – Cary Flitter, Andrew M. Milz, and Jody Thomas López-Jacobs – attest to their qualifications and adequacy in certifications attached hereto as Exhibits "7," "8," and "9," respectively.

Class counsel also consists of Seth R. Lesser and Michael H. Reed of KLAFTER OLSEN & LESSER LLP.  Mr. Lesser and KLAFTER OLSEN & LESSER have been approved as class counsel in

a great many class actions. Among other things, Mr. Lesser has been appointed as lead plaintiffs' counsel by federal court judges in a number of MDLs, as set forth in Mr. Lesser's Summary of Professional Activities at page 1 (Ex. "10" hereto), as well as having been appointed as lead counsel in many other state and federal class actions, including a large number of consumer cases. The cases in which Mr. Lesser has been lead or co-lead counsel have returned well in excess of over half a billion dollars to his clients and have included cases within the areas of consumer law, employment law, and securities law.

Mr. Lesser routinely is asked to speak on consumer and class actions matters, and is, among other things, the author of numerous articles and other publications, including being a contributor and co-editor of the National Consumer Law Center's CONSUMER CLASS ACTIONS treatise. A more complete list of his qualifications is attached as an exhibit to his accompanying certification, to which is also attached a copy of KLAFTER OLSEN & LESSER's firm resume. (*See* Ex. "10," of Seth R. Lesser). Michael Reed, an associate at the KLAFTER firm was admitted to the bar in 2010 and served as a law clerk to Hon. William J. Martini of the District of New Jersey before joining the firm. Mr. Reed has also assisted in the prosecution of this case.

Class co-counsel Robert Murphy is a past Chairperson of the Consumer Protection Committee of the Florida Bar and has participated as a speaker on UCC litigation at seminars sponsored by the Florida Bar, the Academy of Florida Trial Lawyers, the National Association of Consumer Advocates, the National Consumer Law Center, as well as other organizations. He is a former board member of and secretary of the National Association of Consumer Advocates. In June 2016, he was honored by the Florida Bar with the "Consumer Lawyer of the Year Award." He has litigated a full spectrum of consumer cases, cataloged in the Declaration of Robert Murphy, filed herewith.

Mr. Murphy has substantial experience in litigating individual and class actions under the Uniform Commercial Code, including several national classes. (*See* Murphy Declaration, ¶ 23). Mr. Murphy has been appointed lead or co-lead class counsel in well over fifty similar UCC class actions. Mr. Murphy's background and qualifications are more detailed in his declaration filed in support hereof.  (Ex. "11").

Class co-counsel Robert E. Duff has twenty-three years of litigation experience.  Prior to founding his consumer law firm, the Indiana Consumer Law Group/The Law Office of Robert E. Duff, in 2007, attorney Duff clerked for a U.S. Magistrate Judge and Judge on the Indiana Court of Appeals, worked at the Indiana Attorney General's Office and worked for small and large Indianapolis law firms.  He has represented hundreds of Indiana consumers in state and federal court, including handling of hundreds of consumer cases in U.S. District Courts in Indiana and throughout the Midwest.  Attorney Duff has argued before both the Indiana Supreme Court and the Seventh Circuit Court of Appeals on multiple occasions and has taught numerous national and state CLEs on consumer law topics, including repossessions and the Uniform Commercial Code. Attorney Duff has been certified as lead or co-lead counsel for both Indiana and national cases. Mr. Duff's background and qualifications are more detailed in his declaration filed in support hereof. (Ex. "12").

There is nothing to suggest that Plaintiffs have any interests antagonistic to the Class.  *See Allen*, 249 F.R.D. at 185.  The Representative Plaintiffs are prepared to vigorously pursue this lawsuit and act on behalf of the nationwide Class sought to be certified.  They understand their roles and the nature of being a class representative.  Mr. Smith and Mrs. Mccalvin have been deposed.  Plaintiffs respectfully submit that the adequacy prong of Rule 23 is met, completing the analysis of the elements of Rule 23(a).

### 5.   Rule 23(b)(3) -- Common Questions of Law or Fact Predominate

Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 488 (3d Cir. 2015). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 489. "[T]he focus is on whether the defendant's conduct was common as to all of the class members, not on whether each plaintiff has a 'colorable' claim." *Id.* Rule 23 does not mandate the absence or "elimination of all individual circumstances." *Id.* "The predominance inquiry seeks to resolve whether there are 'reliable means of proving classwide injury.'" *Id.*

Predominance is easily satisfied here because this case is focused on Defendants' deficient form notice sent to all Class Members. Each Class Member had a legal right to be told the precise identity of the secured party, the method of intended disposition, the time and place of a public auction, and their right to an accounting. Whether they were provided this information is a question that can be answered with the same proofs, by reviewing any one of the virtually identical form notices received by the members of the Classes. This is what this court held in *Cosgrove*, 2011 WL 3740809, at *5. But, the parties have reached a classwide settlement, making dispositive motion practice or trial unnecessary.

By way of damages, each class member had a RISC that on its face reveals the two figures necessary to determine statutory damages under the model UCC. The determination of damages at UCC § 9625(c) is uniform and, as discussed above, is a mechanical calculation. While a few states have non-uniform damages provisions that cap or reduce the statutory UCC damages, even individual damage computations will generally not impede class certification. *See In re Cmty. Bank of Northern Va.*, 418 F.3d 277, 305–06 (3d Cir. 2005). More important, all Class Members

are being treated equally insofar as settlement remedy.  While, as noted, few states have adopted non-uniform amendments to the statutory damages provision, such differences do not require different treatment of the Class Members for class settlement.  *See Sullivan*, 667 F.3d at 327–28. ("We can find no support in our case law for differentiating within a class based on the strength or weakness of the theories of recovery. Accordingly, we decline to require such an analysis.").

Predominance is generally established in cases dealing with the legality of standardized documents and practices because the document is the focal point of the analysis, *Harlan*, 302 F.R.D. at 329–30; *Oslan v. Collection Bureau of Hudson Valley*, 206 F.R.D. 109, 111–12 (E.D. Pa. 2002).  Again, the putative Class Members were each sent a form Notice (or no Notice at all) after the repossession.  These documents—rather than witness recollection or complex causation evidence—are the subject of the questions of law and fact that predominate in this action. *Cosgrove*, 2011 WL 3740809 *5; *see also McCall*, 236 F.R.D. at 251. (test for violation of form collection notice in FDCPA class action is facial and plaintiff "need not show that she was deceived, that she relied on the letter, or anything else about herself").  In *McCall v. Drive Fin. Serv.*, 2009 WL 8712847 (Phila. CCP, Apr. 10, 2009), the Philadelphia Court of Common Pleas certified on contest a very similar UCC repossession notice class action finding all of the elements of the class certification rule to have been met.[7]  The test for proper notice under the UCC is a statutory, objective one.  *See Cubler*, 83 A.3d at 236 n.1 (setting forth the statutory disclosures required).

---

[7]     To clarify any confusion, there are two separate cases bearing the caption *McCall v. Drive Fin. Services*.  The cited Eastern District case arose under the FDCPA; Judge Brody certified the class on contest.  *Id.*  There was a second proceeding in the Philadelphia Court of Common Pleas concerning the lenders' repossession notices under the same UCC provisions in play here, and that Court also certified the class on contest.  2009 WL 8712847.  Class co-counsel instantly was counsel for Mr. McCall in both cases.

In this case, it is clear that both the issues of fact and the issues of law are straightforward and predominate.

### 6. Rule 23(b)(3) -- Class Action is Superior to Other Available Methods to Resolve This Controversy

Plaintiffs also satisfy the superiority requirement of Rule 23(b)(3).  Efficiency is a primary focus in determining whether the class action is the superior method for resolving the controversy presented.  *In re Prudential*, 148 F.3d at 315.  A class action is superior to other available methods where a class resolution of the common issues among class members "outweighs the difficulties in management of separate and individual claims, and allows access to the courts for those who likely would not gain such access standing alone – particularly in light of the relatively modest amount of statutory damages."  *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 413 (E.D. Pa. 2010).

There is no better method available for the adjudication of the claims here than through a class action.  As this Court held in *Cosgrove*, the UCC's "statutory damages are relatively modest, and the burden of managing over 1,000 separate actions would be substantial," making a class action the superior method of adjudication. *Cosgrove*, 2011 WL 3740809, at *5.  This is no less true even though the settlement class here at 2890 secured obligations is somewhat larger in number than the 1800 obligations in *Cosgrove*.

### 7. Rule 23(g) Factors

Rule 23, as amended, states that this Court "must consider" four additional factors in dealing with appointment of class counsel in the certification process.  See Fed. R. Civ. P. 23(g)(1)(C); *Sheinberg*, 606 F.3d at 133–34.

While some of the Rule 23(g) elements are covered by the earlier discussion of adequacy, in the Certification of Cary L. Flitter filed herewith, counsel attests to the following: (a) the work

counsel has done in identifying or investigating the potential claims; (b) counsel's experience in handling class actions, other complex litigation and claims of these types asserted in the action; (c) counsel's knowledge of the applicable law; and (d) the resources that counsel will commit to representing the class. (Ex. "7," Flitter Cert.).

The Flitter Certification, taken in conjunction with the certifications of Messrs. Lesser, Murphy, and Duff, reflects that Plaintiffs' counsel have spent considerable effort in identifying and investigating potential claims and has concluded that the instant claim for statutory damages under Article 9 of the UCC is the only viable claim to be lodged by the class in relation to the Trusts' defective Notices.  (Id. ¶ 27).  This Certification also recites counsel's handling of many other consumer matters, and recognition by this Court and others of capable handling of assorted consumer class cases.  (Id. ¶ 28).  This Certification speaks to Plaintiffs' counsel's "knowledge of the applicable law" based on over 35 years of practice, many appointments as class counsel, university and law faculty appointments, authorship, and lectures and CLE trainings presented in the region and throughout the country.  (Id. ¶¶ 28–31).  Finally, the Flitter Certification speaks to the resources that counsel has committed and is prepared to commit to this case, as necessary.  (Id. ¶ 32).  This fulfills the mandate of Rule 23(g).

## VI.   THE CLASS SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

### A.  Standards for Preliminary Approval of Class Settlement

When a proposed class-wide settlement is reached, it must be submitted to the Court for a preliminary determination approving the settlement.  Fed. R. Civ. P. 23(e); *Harlan*, 302 F.R.D. 319 at 324-25.   The procedure for approval of a proposed class action settlement involves a two-step process: (1) an order preliminarily approving the class settlement; and (2) a "final approval" order after notice of the settlement is provided to the class and a hearing to consider the fairness

of the proposed settlement has been held.  *See* MANUAL FOR COMPLEX LITIGATION, Fourth (2004) ("MCL") §§ 21.632; *Gates* 248 F.R.D. at 438.

Courts must make an initial evaluation of the fairness of the settlement, prior to the issuance of notice.  Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, a preliminary determination approving the class settlement is warranted. *Gates*, 248 F.R.D. at 439; MCL § 21.632.  The issue before a court is whether the proposed settlement appears fair, reasonable, and adequate.  *Gates*, 248 F.R.D. at 438.  In undertaking its analysis, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement.  *In re Fasteners Antitr. Litig.*, No. 08–md–1912, 2014 WL 285076 at *4 (E.D. Pa. Jan. 24, 2014) (citing cases).

There is a "strong presumption in favor of voluntary settlement agreements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010).  "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"  *Id.* (*quoting In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)); *accord In re Fasteners Antitr. Litig.*, 2014 WL 285076 at *4.

### B.  This Court should make a Preliminary Determination Approving the Class Settlement

#### 1.  The Settlement was Reached After Arms-Length Negotiations

This case was filed in March of 2017, which followed upon extensive investigation by Plaintiffs' counsel into the claims and the status of the Defendants, given Condor Capital Corporation's  (the predecessor entity whose loan portfolio was sold (in part) to the Defendant

Trusts) receivership and dissolution in New York State.   After the initial case meeting before the Court and meet and confer sessions between counsel, Plaintiffs propounded written class discovery, which Defendants answered.  Plaintiffs' counsel traveled to San Diego, CA to take the deposition of Defendants' corporate designee Stephanie Jimenez—an employee of the Trusts' loan servicer, First Associates.  Plaintiffs also deposed a witness employed by the Trusts' parent company—Oz Management (previously Och-Ziff)—in New York, NY.  After a good deal more discovery, including work regarding the nature of Condor's records and the identifiability of potential Class members, on November 20, 2017, the parties held a mediation session at JAMS before the Hon. Diane Welsh, U.S.M.J. (ret.).  Settlement negotiations were unsuccessful at that time.

Thereafter, Plaintiffs filed a contested Motion for Class Certification.  (ECF 61).  During the briefing of the motion, the parties continued informal settlement discussions.  The parties eventually scheduled another mediation session at JAMS before Judge Welsh on March 27, 2018—the day before the scheduled oral argument on Plaintiffs' Motion for Class Certification. With the substantial aid and recommendation of Judge Welsh, the parties successfully negotiated what eventually became a $5.7 Million settlement, which includes a waiver of more than $14 Million in deficiency balances. The settlement also includes valuable nonmonetary relief —the removal of negative trade lines from the Class Members' credit reports.  This settlement was reached at arms-length after two full days of mediation and a number of informal settlement discussions.

### 2.   The Settlement is Fair and Contains No Deficiencies

The consideration provided for in the Settlement Agreement is substantial, at over $19,700,000 in cash and debt relief alone, before accounting for credit report correction.  This is

well within the range of settlements in similar UCC repossession notice class settlements in this district and region. (See Ex. "7," Flitter Cert. ¶ 33); *Compare Cosgrove*, 2011 WL 3740809 *7.

If this settlement is approved and Class Counsel fees are awarded in the requested sum of $2,280,000, litigation expenses of up to $32,500, settlement administration costs (for notice and mailing, etc.) of $37,500.00, and $20,000.00 for Plaintiffs' service awards, the net cash fund will be $3,330,000 available to distribute to the Class.[8]  This will yield approximately $1,150.00 for each of the approximately 2,890 class member loan files via a pro rata distribution.  If there are co-obligors, each would share a portion of the cash payment.  Auto loan deficiency waivers for those with balances will be worth an average of approximately $8,046 per Class Member loan account.  Correction of negative credit reporting (Ex. "1," Sett. Agreement ¶ 2.09) adds thousands in value per Class Member.

In exchange for the above consideration, Defendants obtain a release of class member claims for damages relating to their repossessions and their loan accounts.  The aggregate settlement contains a robust cash benefit for the Class Members, contains no obvious deficiencies, and should be approved preliminarily.

### 3.   The Settlement is Within the Range of Reasonableness

The reasonableness of a proposed settlement depends in part upon a comparison of the present value of the damages the plaintiff would recover if successful, discounted by the risks of not prevailing.  *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *In re General Motors*, 55 F.3d at 806).  The cash component of this settlement is commensurate with similar UCC repossession notice class action settlements.   (See Ex. "7," Flitter Cert. ¶ 33).

---

[8]      Class Counsel will move separately, at the time of final approval, for approval of attorney fees and expenses. The fees to be requested fall well within the range of that approved by other Court of Common Pleas and the federal district court in similar UCC class settlements.  (See Ex. "7," Flitter Cert. ¶ 33).

Plaintiffs are entitled to statutory damages and if approved as requested, the Class Members will all recover $1,150 in cash, along with credit repair and complete debt forgiveness.

It bears note that the best *possible* recovery would consist of a statutory damages award of up to $28 Million.  But this assumes multi-state class certification on contest, and complete success on liability, on damages calculated under the state law regimes, and on Defendants' affirmative defenses and setoff claims.  Moreover, absent a voluntary settlement, consumers in states other than Pennsylvania, New York, and Indiana) would receive no relief since the class claims asserted here and in the *Deviese* Case asserted claims under Pennsylvania, New York, and Indiana law. Ultimately, because each Class Member received a Notice containing at least one of three defects, Class Members were injured in the same way, and it makes sense that their awards should be calculated with the same formula.  The Third Circuit made as much clear in its *en banc* decision in *Sullivan*, 667 F.3d at 327-28.

And it bears noting that even if individual state class cases proceeded to summary judgment practice or trial, the verdicts would not provide the equitable type relief achieved by the settlement. At $5.7 Million in cash, the significant value of clearing negative credit, and the over $14 Million in debt forgiveness, one could argue the result in this settlement is on par with, indeed better than, the very best-case trial scenario.  Moreover, the relief will be available now, not later, and it will be certain, as opposed to dependent on the resolution of contested class certification and summary judgment motions.  This settlement is equally or more favorable, on balance, than any successful litigation trial outcome, without the uncertainty and delay.

### 4.  Class Counsel Recommends the Settlement

Class Counsel has extensive experience in class action litigation in the areas of consumer protection law and the UCC, and are thoroughly familiar with the factual and legal issues of the

case.  (See Flitter Cert., Ex. "7," ¶ 28, and certifications of co-counsel submitted herewith).  The Settlement followed a thorough investigation by Class Counsel into the merits of the case and the nature of the claims against possible defendants, class certification motion practice, and discovery including documentary discovery, work in identifying sources of information and identifiability of Class members, and depositions of witnesses in Philadelphia, San Diego and New York City (twice).

One factor informing the decision to settle was the diminished possibility of recovery in prolonged litigation given the Trusts' short-term business model.  Condor Capital Corporation was placed into receivership by the Attorney General of the State of New York and has since filed for dissolution.  The Trusts were formed for the purpose of acquiring loan accounts from the receiver for Condor Capital Corporation and collecting on those loan accounts.  Because the Trusts' assets will only continue decreasing over time, Class Counsel was reasonably concerned about the ability to collect from the Trusts at the conclusion of protracted litigation. Prolonged litigation created the significant risk that the Trusts would have limited or no assets at the conclusion of this litigation, rendering the Class without a remedy.  (Id. ¶ 34).  There was $4 Million in insurance coverage purchased from Scottsdale Insurance by the Trusts servicer, First Associates.  (Ex. "4", Jimenez Dep. at pp. 84:1-19, 85:9-13).  However, there was a reservation of rights and the $4 million policy had "wasted" down by nearly $1 Million to cover substantial defense costs.

Although confident in his claims, Plaintiffs may face a number of risks if their case proceeds.  Defendants deny that the Repossession Notices run afoul of the UCC's requirements. A lengthy appeal process would be likely, no matter how the case was decided at the trial level. These issues, and others, presented risks for the parties and played a role in the decision to reach a settlement.

The credit reporting relief calls for Defendants to request that the Consumer Reporting Agencies remove the entire applicable negative tradeline from Class Members' credit reports. (Ex. "1," Sett. Agreement ¶ 2.09).   This can allow some Class Members to refinance their home, improve job opportunities, or just increase their credit score. This adds greatly to the value of the settlement, in the view of Class Counsel.   Such relief would not be awardable in a litigated resolution even if Plaintiffs secured a verdict for greater damages.   *See Cosgrove*, 2011 WL 3740716, at *1 (in approving similar UCC repo notice class settlement, court found "valuable" the settlement's "equitable relief of credit report correction").[9]

Counsel have analyzed each of Defendants' arguments against the merits of Plaintiffs' claims, Defendants' affirmative defenses, and any potential arguments against class certification, and appreciate the time and effort that future, prolonged litigation would entail.  (Ex. "7," Flitter Cert., ¶ 34). For all these reasons, Class Counsel recommends the Court make a preliminary determination approving the settlement and ordering the issuance of notice.

## VII.   CLASS NOTICE

Administration of Class Notice, opt-outs, objections and settlement checks will be handled by American Legal Claims Services, LLC, an experienced claims administrator (Ex. "1," Settlement Agreement ¶ 1.18).   With the Settlement Agreement and this Motion, Plaintiffs also submit the Class Notice to be sent to the Class.  (See Ex. "1," Sett. Agreement at Exhibit "C" thereto).   The administrator's website will also post copies of the Settlement Agreement, this motion, and the forthcoming motions for final approval and attorney fees and costs.   This Class Notice regime comports with Fed. R. Civ. P. 23(c)(2) requiring the best notice practicable under the circumstances.  *See Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 113 (E.D. Pa. 2005)

---

[9]      Plaintiffs plan to present an expert report as to the details and benefits of the credit reporting fix with their motion for final approval.

(approving mail notice in FDCPA class settlement); *see also In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 233 (E.D. Pa. 2009) (approving mail plus website notice).

The Class Notice provides a detailed summary of the case and settlement.  (See Ex. "1," Sett. Agreement at Exhibit "C" thereto). In plain-English, the Class Notice clearly informs Class Members regarding: (a) the claims, defenses and issues in the case; (b) terms of the proposed settlement; (c) the amount of the request for an award of attorney's fees and expenses to Class Counsel; (d) the agreed individual settlement payment to Representative Plaintiffs; (e) the Class Member's right to opt-out, and thereby not participate in the proposed settlement; (f) the Class Member's right to opt out of deficiency forgiveness; (g) the Class Member's right to object to the proposed settlement; (h) the time, date and location of the final approval hearing; and (i) the Class Member's right to appear at the final approval hearing in favor of or in opposition to the proposed settlement.

The proposed Class Notice comports with the requirements of Rule 23(c) and 23(e) as amended, and with the Court of Appeals' decision in *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 185 n.6 (3d Cir. 2006), recommending plain-English class notices.  The Class Notice is clear and reader-friendly, and provides Class Members with sufficient information to make an intelligent decision as to whether to remain in the Class, opt-out, or object to any aspect of the proposed settlement.  The website and toll-free phone number will provide other avenues for notice, and the website can be readily updated with pertinent pleadings or change(s) of date, etc.

## VIII.   <u>CONCLUSION</u>

The proposed settlement puts an end to this litigation, and falls well within the range of a fair, reasonable**,** and adequate award.   This Court should preliminarily approve the Class

settlement, and make a preliminary determination on class certification such that Notice to the Class may issue. Further, the proposed settlement Class meets the requirements of Rules 23(a) as well as Rule 23(b)(3) sufficient to warrant a preliminary determination. Plaintiffs respectfully request that the Court enter an order granting Plaintiffs' Motion for Preliminary Approval of Class Settlement, Preliminary Determination on Class Certification, and for Issuance of Notice to the Class.

Respectfully submitted:

Date:   June 29, 2018

/c/ Cary L. Flitter
CARY L. FLITTER
ANDREW M. MILZ
JODY T. LÓPEZ-JACOBS
**FLITTER MILZ, P.C.**
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
Phone: (610) 822-0782

SETH R. LESSER (admitted *Pro Hac Vice*)
MICHAEL H. REED (admitted *Pro Hac Vice*)
**KLAFTER OLSEN & LESSER LLP**
Two International Drive, Suite 350
Rye Brook, NY 10573
Phone: (914) 934-9200

ROBERT MURPHY (*Pro Hac Vice Pending*)
**MURPHY LAW FIRM**
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
Phone: (954) 763-8660

ROBERT E. DUFF (*Pro Hac Vice Pending*)
**THE LAW OFFICE OF ROBERT E. DUFF**
P.O. Box 7251
Fishers, IN 46037
Phone: 800-817-0461

**ATTORNEYS FOR PLAINTIFFS**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TARA MCCALVIN, GHANI SMITH, HOLLI WISE, JAMES C. DEVIESE and THERESA DEVIESE<br><br>*on behalf of themselves and all others similarly situated*<br>　　　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>CONDOR HOLDCO SECURITIZATION TRUST, CONDOR ASSETCO SECURITIZATION TRUST & CONDOR RECOVERY SECURITIZATION TRUST,<br>　　　　　　　　　　Defendants. | CLASS ACTION<br><br><br><br>CIVIL ACTION NO. 17-cv-01350(TJS) |

**CERTIFICATION OF COUNSEL**

I, CARY L. FLITTER, do hereby certify that the relief sough herein is uncontested.


DATE:  June 29, 2018　　　　　　　　　*/s/ Cary L. Flitter*
　　　　　　　　　　　　　　　　　　CARY L. FLITTER

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TARA MCCALVIN, GHANI SMITH, HOLLI WISE, JAMES C. DEVIESE and THERESA DEVIESE<br><br>*on behalf of themselves and all others similarly situated*<br>　　　　　　　　　　　Plaintiffs,<br><br>　　　　vs.<br><br>CONDOR HOLDCO SECURITIZATION TRUST, CONDOR ASSETCO SECURITIZATION TRUST & CONDOR RECOVERY SECURITIZATION TRUST,<br>　　　　　　　　　　　Defendants. | CLASS ACTION<br><br><br><br>CIVIL ACTION NO. 17-cv-01350(TJS) |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of Plaintiffs' Motion for Preliminary Approval of Class Settlement, Preliminary Determination on Class Certification, and for Issuance of Notice to the Class (Uncontested) has been electronically filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to:

| | |
|---|---|
| Eric S. Mattson<br>SIDLEY & AUSTIN<br>One S. Dearborn St.<br>Chicago, IL 60603-6060<br>Email: emattson@sidley.com | Tamara S. Grimm<br>Kevin C. Rasp<br>Kevin Michael O'Hagan<br>O'HAGAN MEYER, LLC<br>100 N 18th Street Suite 700<br>Philadelphia, PA 19103<br>Email: TGrimm@ohaganlaw.com<br>Attorneys for Trust Defendants |

Date:  June 29, 2018

　　　　　　　　　　　　　　　　/s/ Cary L. Flitter
　　　　　　　　　　　　　　　　CARY L. FLITTER