# EXHIBIT "1"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TARA MCCALVIN, GHANI SMITH, HOLLI WISE, JAMES C. DEVIESE and THERESA DEVIESE<br><br>*on behalf of themselves and all others similarly situated,*<br><br>               Plaintiffs,<br><br>    vs.<br><br>CONDOR HOLDCO SECURITIZATION TRUST, CONDOR ASSETCO SECURITIZATION TRUST, and CONDOR RECOVERY SECURITIZATION TRUST,<br><br>             Defendants. | CLASS ACTION<br><br><br><br><br><br>CIVIL ACTION NO. 17-cv-01350(TJS) |

## CLASS ACTION SETTLEMENT
## AGREEMENT AND RELEASE

# TABLE OF CONTENTS

PAGE

I.   DEFINITIONS ................................................................................................. 4

II.  GENERAL TERMS OF THE SETTLEMENT .................................................. 8

2.01.   Conditional Nature of Agreement. ................................................... 8

2.02.   Effect of Disapproval ........................................................................ 9

2.03.   Denial of Liability; No Admissions .................................................. 9

2.04.   Class Certification. ........................................................................... 10

2.05.   Proposed Order for Preliminary Approval. ..................................... 11

2.06.   Monetary Relief to Class Members. ................................................ 11

2.07.   Identification of Class Members ...................................................... 13

2.08    Electronic List .................................................................................. 13

2.09.   Credit Reporting and Collections. ................................................... 13

2.10.   Cease and Desist Collection. ........................................................... 14

2.11.   Covenant Not to Sue. ....................................................................... 15

2.12    Class Members' Option to Decline Forgiveness of Deficiency Claim. ..... 15

2.13.   Satisfaction of Monetary Judgments Against Class Members. ....... 15

2.14.   Attorneys' Fees. ............................................................................... 16

2.15.   Individual Service Awards. .............................................................. 16

2.16.   Dismissal of Indiana Litigation ....................................................... 16

III. ADMINISTRATION OF THE SETTLEMENT ................................................ 17

3.01.   Costs of Administration. .................................................................. 17

3.02.   Treatment of Class Members Who Have Moved or Died. .............. 17

3.03.   Uncashed/Unclaimed Checks. ......................................................... 18

i

3.04.   Notification to Class Counsel and Condor Trusts' Counsel. ..................................... 18

3.05.   *Cy Pres*. .............................................................................................................. 18

3.06.   Certification of Distribution. ............................................................................... 19

IV.   CLASS SETTLEMENT PROCEDURES ..................................................................... 19

4.01.   Motion for Preliminary Approval. ....................................................................... 19

4.02.   Notice of Class Settlement. .................................................................................. 21

4.03.   Opting Out and Forgiveness of Deficiency Balance. ........................................... 21

4.04.   Order and Final Judgment. ................................................................................... 22

4.05.   Settlement Administrator. ..................................................................................... 23

V.   RELEASES ................................................................................................................... 23

5.01.   Release as to the Class. ......................................................................................... 23

5.02.   Release as to the Condor Trusts. .......................................................................... 23

5.03.   Unknown Claims or Losses. .................................................................................. 24

5.04.   Release Summary. ................................................................................................. 24

VI.   QUALIFIED SETTLEMENT FUND ........................................................................... 24

6.01.   Definition. .............................................................................................................. 24

6.02.   Employer Identification Number. .......................................................................... 25

6.03.   Relation-Back. ....................................................................................................... 25

6.04.   The Condor Trusts' Obligations After Making Deposits. ..................................... 25

6.05.   Administration Tax Obligations. ........................................................................... 26

VII.   MISCELLANEOUS PROVISIONS ............................................................................. 26

7.01.   Parties to Use Best Efforts to Effectuate Settlement. ........................................... 26

7.02.   Venue. .................................................................................................................... 27

7.03.   Entire Agreement...................................................................................... 27

7.04.   Modification Only in Writing................................................................... 27

7.05.   No Ambiguity to be Construed in Favor of Any Party........................... 27

7.06.   Successors................................................................................................ 28

7.07.   Waivers.................................................................................................... 28

7.08.   Counterparts............................................................................................ 28

7.09    Retention of Jurisdiction........................................................................ 28

7.10    Taxes....................................................................................................... 28

7.11.   No Opt Out Solicitation or Inducement................................................. 29

## <u>CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE</u>

Subject to final approval by the Court and in exchange for the good and valuable consideration set forth herein, this Class Action Settlement Agreement and Release dated as of June 18, 2018 is entered into by and between Plaintiffs Tara Mccalvin, Ghani Smith, Holli Wise, James C. Deviese, and Teresa Deviese (the "Class Representatives" or "Plaintiffs"), on behalf of themselves, the Class Members as defined herein, and the Condor Trusts (as defined at 1.08 *infra*), intending that as among the Parties, including all Class Members, the Litigation and the Settled Claims shall be fully and finally compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to all Parties and Released Persons upon the terms and conditions set forth below.

WHEREAS, on or about January 19, 2017, a Class Complaint was removed to the United States District Court for the Northern District of Indiana in a matter captioned *James C. Deviese and Teresa Deviese v. Condor Securitization Trust, et al.*, No. 17-00168 (the "Indiana Litigation"), which alleged, *inter alia*, violations of Indiana's Uniform Commercial Code with respect to certain repossession practices;

WHEREAS, on or about March 24, 2017, a Class Complaint was filed in the United States District Court for the Eastern District of Pennsylvania in a matter captioned *Tara Mccalvin v. Condor Securitization Trust*, No. 17-1350 (the "Pennsylvania Litigation," and together with the Indiana Litigation, the "Litigation"), which alleged, *inter alia*, violations of Pennsylvania's and New York's Uniform Commercial Codes with respect to certain repossession practices;

WHEREAS, a Third Amended Complaint has been filed against only Condor Holdco Securitization Trust, Condor Assetco Securitization Trust, and Condor Recovery Securitization Trust in the Pennsylvania Litigation alleging a nationwide class action based on violations of the Uniform Commercial Code or analogous state law in connection with the use of post-repossession

1



notices of sale or disposition as to repossessed vehicles, representative copies of which are attached
as exhibits to the Third Amended Complaint;

WHEREAS, contested issues of both law and fact exist concerning the allegations and
claims that are made in the Third Amended Complaint, and the prior iterations of Complaints;

WHEREAS, Class Counsel has conducted an extensive investigation into the facts and
law relating to the Litigation and the repossession and Repossession Notice practices of the Condor
Trusts;

WHEREAS, the Parties have engaged in copious discovery, including document
production and depositions;

WHEREAS, the Parties mediated this matter on November 20, 2017 and March 27, 2018
at JAMS, Philadelphia, before the Honorable Diane Welsh (Ret.), there reaching a settlement in
principle to be further memorialized in this Settlement Agreement and presented to the Court for
approval;

WHEREAS, the Parties intend to urge approval of this Settlement Agreement by the Court
after consideration of the following substantial benefits that the settlement bestows upon the Class
(and as further described below):

(i)      The Condor Trusts will pay or cause their designees to pay $5.7 million (five
million seven hundred thousand U.S. dollars) ("Settlement Fund") into an account at PNC
Bank, N.A. within fourteen days of an order of Preliminary Approval of the Settlement
Agreement.   The Settlement Fund is for the benefit of the Class and for purposes of
implementing this settlement, and will be used to provide monetary relief to Class
Members on a *pro rata* basis, to pay Class Counsel's approved fees and expenses, to pay



approved class representative service awards, and to pay the costs of Class Notice and administration of the settlement, all as approved by the Court;

(ii)     The Condor Trusts will release Class Members from any and all post-repossession deficiencies owed or claimed due to the Condor Trusts in connection with the retail installment sales contracts or other vehicle loans at issue in the Litigation (unless the Class Member rejects this relief), with the total claim upon such deficiencies approximating over $14 million (fourteen million U.S. dollars) for the entire Class (including co-obligors); and

(iii)     The Condor Trusts will make a request or cause their designee, an entity which shall have full authority to act on behalf of the Condor Trusts, to make a request to Experian, Equifax, TransUnion, Innovis, and any other consumer reporting agency, as that term is defined by 15 U.S.C. § 1681a(f), to which the Condor Trusts have ever reported information regarding a Class Member's credit file (the "Credit Reporting Agencies") to delete entirely any trade line from Class Members' credit files relating to the finance agreements at issue in the Litigation in the manner set forth in Section 2.09 below.

**WHEREAS,** Class Counsel has fully analyzed the merits of the Parties' contentions and this settlement as it affects all Parties, including the individual Class Members, and has deposed designees of the Condor Trusts, and after taking into account the foregoing along with the substantial risks of continued litigation, is satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate, and equitable, and that a settlement of the Litigation is in the best interests of the Class; and

**WHEREAS,** the Condor Trusts deny any and all liability in connection with the Litigation, but nevertheless desire to settle the Litigation on the terms and conditions set forth in this



Agreement, for the purposes of avoiding the burden, expense, and uncertainty of continuing litigation, and for the purpose of putting to rest the controversies engendered by the Litigation;

NOW THEREFORE, intending to be legally bound and in consideration of the covenants and agreements set forth in this Agreement, the Class Representatives, the Class, and the Condor Trusts agree to the settlement of the Litigation, subject to Court approval, as follows:

I.   **DEFINITIONS**

1.01.   "Agreement" and "Settlement Agreement" mean this Class Action Settlement Agreement and Release.

1.02.   "Cash Payment Eligible Class Members" means Class Members whose Class Notice is not returned as undeliverable within the meaning of Section 4.02.

1.03.   "Class" means all persons in the United States:

    a.    who financed a vehicle primarily for consumer use, whose consumer loan contract or installment sales contract was assigned to the Condor Trusts or one of them;

    b.    from whom the Condor Trusts, or one of them or their designee, repossessed the financed vehicle, or ordered it repossessed;

    c.    who were sent a Notice of Our Plan to Sell Property from the Condor Trusts or similar document which did not:

        (1) precisely state the method of disposition, *viz.*, whether a public auction or private sale;

        (2) list the time and place of any public sale of the vehicle;

        (3) describe the precise legal name and address of the secured party; or

        (4) state that the borrower has the right to an accounting;

4

  d. or, who were sent no notice at all;

  e. from November 23, 2015 through March 28, 2018.

  1.04. "Class Members" means those persons who, along with the Class Representatives, comprise the "Class" as defined in Section 1.03; and who do not timely exclude themselves from the settlement.

  1.05. "Class Counsel" means Cary L. Flitter, Andrew M. Milz, Jody Thomas López-Jacobs, and Flitter Milz, P.C.; Seth Lesser, Michael Reed, and Klafter Olsen & Lesser LLP; Robert W. Murphy and the Murphy Law Firm; and Robert E. Duff and the Indiana Consumer Law Group.

  1.06. "Class Notice" means notice of the Settlement Agreement sent to Class Members pursuant to section 4.02 of this Agreement.

  1.07. "Class Period" means the period from November 23, 2015 through March 28, 2018.

  1.08. The "Condor Trusts" or the "Trusts" means Condor HoldCo Securitization Trust, Condor AssetCo Securitization Trust, Condor Recovery Securitization Trust, their owners, beneficiaries, settlors, trustees, affiliates, subsidiaries, parent companies, and/or divisions, and all of their respective officers, members, directors, and employees, but excludes Condor Capital Corporation.

  1.09. "Deficiency Balance" means the account balance allegedly remaining after the repossession and disposition of a Class Member's financed vehicle and the application of the proceeds of the sale to that person's account, plus the accrued interest and other charges, minus any payments made by a Class Member post-repossession (excluding payments made by Class Members who reinstated their account and had their repossessed vehicle returned, unless that vehicle was subsequently repossessed again and sold).



1.10.   "Distribution Date" means the date fourteen days after the Effective Date, and the date on or about which the checks shall be mailed to Class Members.

1.11.   "Effective Date" means the date after the entry by the Court of the Final Order Approving Class Action Settlement (the "Final Approval Order") and (a) when the applicable period for the filing of a notice of appeal has expired without an appeal having been filed; or (b) if an appeal is taken, upon entry of an order affirming the Final Approval Order and when the applicable period for the initiation of any further appeal of the affirmance of the Final Approval Order has expired without a further appeal or petition for review having been filed.

1.12.   "Parties" means the Class Representatives, the Class, and Condor Trusts.

1.13.   "Preliminary Approval" of this Agreement means that the Court has entered an order preliminarily approving the class settlement, preliminarily determining that class certification is proper, and directing the issuance of notice.

1.14.   "Released Persons" means the Condor Trusts and all of their respective current and former affiliates, managers, investors, advisors, owners, related companies, parents, subsidiaries, trustees, servicers, officers, directors, members, agents, employees, contractors, subcontractors, insurers, coinsurers, reinsurers, attorneys, predecessors, and successors, but excluding Condor Capital Corporation.

1.15.   "Repossession Notice" means a notice substantially similar to the notices attached to the Third Amended Complaint as Exhibits A, B, C, or D.

1.16.   "Secured Obligation" means a retail installment sales agreement or comparable vehicle finance transaction to which a Class Member and one or more of the Condor Trusts are a party or an assignee of a party where the financed vehicle collateralizing the transaction was repossessed during the Class Period.



1.17.  "Settled Claims" means all claims, demands, actions, causes of action, rights, offsets, suits, damages, lawsuits, liens, costs, losses, expenses, or liabilities of any kind whatsoever, for any relief whatsoever, including monetary, injunctive, or declaratory relief, rescission, general, special, statutory, and punitive damages, as well as any claims for treble damages, penalties, attorneys' fees, costs, or expenses, whether known or unknown, suspected or unsuspected, contingent or vested, which the Class Representatives or any Class Member has had, now has, or will ever have relating to the Class Representative's or Class Member's motor vehicle loan with the Condor Trusts, the repossession of any Class Representative's or Class Member's motor vehicle by Condor Trusts or its designees, or the Class Representative's or Class Member's loan account with any of the Condor Trusts.  This includes any alleged representations, misrepresentations, disclosures or incorrect disclosures, failures to disclose, acts or omissions, deceptions, acts of unconscionability, unjust enrichment, unfair business practices, breaches of contract, conspiracy, or violations of any unfair or deceptive trade practice statute, whether federal, state, or local, and specifically including, without limitation, the Uniform Commercial Code or any implementing regulations related to repossession practices, repossession collection efforts, and any alleged damages or losses incurred in connection with the repossession or surrender of vehicles or the sale of any repossessed or surrendered vehicles that are the subject of the Litigation.  This Settlement Agreement does not release either Class Members or the Trusts from any claims for physical personal injuries, or any claims arising from other accounts or lending relationships apart from the Secured Obligations at issue in the Litigation.

1.18.  "Settlement Administrator" means American Legal Claims Services, LLC, an independent class action settlement administration company retained for purposes of administering the Settlement Agreement, or such other administrator as the Parties, through counsel, shall agree



upon; the responsibilities of the Settlement Administrator shall be those set forth herein as to notice, claims, payments, the Settlement Fund, and tax liabilities.

1.19.   "Settlement Fund" or "QSF" means the amount of $5.7 million (five million seven hundred thousand U.S. dollars), which Condor Trusts will transmit or cause their designees to transmit into an account at PNC Bank, N.A. within fourteen days following the issuance of the Court's order granting Preliminary Approval.   The Settlement Fund will be used to provide monetary relief to Cash Payment Eligible Class Members, to pay Class Counsel's attorney fees and expenses, to pay class representative service awards, and to pay for the costs of notice and administration of the Settlement Agreement, all as approved by the Court.   The Settlement Fund may not be commingled with any other funds and may be held in cash, cash equivalents, certificates of deposit, or instruments insured by an arm of or backed by the United States government.   The Settlement Fund may, but need not, be deposited at interest.   Any accrued interest on the Settlement Fund shall become part of the Settlement Fund, available for distribution to the Class.   Upon funding of the Settlement Fund, the principal and any accrued interest of the Settlement Fund shall be held in trust by PNC Bank, N.A. for the benefit of the Class pending the entry of the Final Approval Order.

1.20.   As used in this Agreement, the plural of any defined term includes the singular, and vice versa.

## II.   GENERAL TERMS OF THE SETTLEMENT

2.01.   Conditional Nature of Agreement.

This Agreement, including all associated exhibits and attachments, is made for the sole purpose of attempting to consummate a settlement of the Litigation on a class-wide basis.   The Agreement is made in compromise of disputed claims.   The Agreement is intended by the Parties

8



to fully, finally, and forever resolve the Settled Claims subject to the terms and conditions set forth in this Agreement. Because this Settlement Agreement resolves a class action on a classwide basis, it must receive preliminary and final approval by the Court. Accordingly, the Parties enter into this Agreement on a conditional basis that is subject to the final approval of the Court.

2.02.   Effect of Disapproval.

If the Court does not enter the Final Approval Order, or the Settlement Agreement does not become final for any reason, this Agreement shall be of no force or effect whatsoever (except with respect to this paragraph 2.02 and with respect to the return of funds as indicated in this Agreement); it shall not be referred to or utilized to establish or oppose liability, damages, or suitability for class certification; and any negotiations, terms, execution, and filing of the Settlement Agreement shall remain subject to the provisions of Federal Rule of Evidence 408.

2.03.   Denial of Liability; No Admissions.

(a)   The Condor Trusts deny the validity of all claims asserted in the Litigation and deny that, if the Litigation proceeded on a contested basis, it could properly be certified for classwide treatment. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by the Condor Trusts of any legal violations, any legal requirement, or any failure to comply with any applicable law. Except as necessary in a proceeding to enforce this Agreement, this Agreement and its terms and provisions shall not be offered or received as evidence in any proceeding to establish any liability or admission on the part of the Condor Trusts or any Released Persons or to establish any violation of federal, state, local, or other applicable law. The Parties agree and represent that if the Court does not approve the Agreement, or any appellate court disapproves of the Agreement in any way that prevents the Agreement from becoming final and effective, no Party will use or

9



attempt to use any conduct or statement of any other Party in connection with this Agreement, including any effort to seek approval of the settlement, to affect or prejudice any other Party's rights in any ensuing litigation.

(b)     The Condor Trusts have agreed to resolve the Litigation through this Agreement, but to the extent this Agreement is deemed void or the Effective Date does not occur, the Parties do not waive, but rather expressly reserve, all rights to challenge all claims and allegations in the Litigation upon all procedural and factual grounds, including without limitation the ability to challenge class action treatment on any grounds.  The Parties expressly reserve all rights and defenses as to any claims and do not waive any such rights or defenses if the Agreement is not approved for any reason.

(c)     If this Agreement terminates pursuant to its terms without final approval, the Pennsylvania Litigation shall revert to its status as it existed before the execution of the Agreement, and any monies paid or advanced or caused to be paid or advanced by the Condor Trusts or their designees shall be returned within fourteen days, except for any portion of the funds advanced to the Settlement Administrator and used for services actually rendered under Section 2.06 of this Agreement.

2.04.   Class Certification.

Solely for purposes of settlement, the Parties stipulate that a Class as defined above in Section 1.03 shall be certified; that Tara Mccalvin, Ghani Smith, Holli Wise, James C. Deviese, and Teresa Deviese shall be appointed as Class Representatives; and that Cary L. Flitter, Andrew M. Milz, Jody Thomas López-Jacobs, and Flitter Milz, P.C.; Seth Lesser, Michael Reed, and Klafter Olsen & Lesser LLP; Robert W. Murphy and the Murphy Law Firm; and Robert E. Duff and the Indiana Consumer Law Group shall be appointed as Class Counsel, subject to approval of the Court.



2.05.   <u>Proposed Order for Preliminary Approval</u>.

In connection with the application for Preliminary Approval of this Agreement, the parties shall submit to the Court a proposed order in the form attached as Exhibit A.

2.06.   <u>Monetary Relief to Class Members</u>.

Within fourteen days following the entry of an order granting Preliminary Approval, the Condor Trusts will issue or cause their designee to issue a check or wire transfer in the amount of the Settlement Fund, payable to *Mccalvin v. Condor Trusts Class Settlement Fund* and sent to PNC Bank, N.A. The Settlement Administrator shall be entitled to immediately withdraw from the Settlement Fund up to $37,500, representing the estimated reasonable sums necessary to pay for costs of administration, including printing and mailing of notice to the Class.

Under no circumstances shall Condor Trusts be required to pay more than $5.7 million in connection with this Settlement Agreement. The Settlement Fund shall be used solely for purposes of implementing this Settlement Agreement, which will be used to provide monetary relief to Cash Payment Eligible Class Members, to pay Class Counsel's attorney fees and expenses as approved by the Court, to pay approved class representative service awards, and to pay for costs of notice and administration. Under no circumstances (other than termination of this Agreement) shall any of the money in the Settlement Fund revert to Condor Trusts.

On or about the Distribution Date:

a.      The Condor Trusts shall release any claim to the Deficiency Balances in accordance with Section 5.02 below.

b.      <u>Class Relief</u>. Cash Payment Eligible Class Members shall be sent a *pro rata* share of the Settlement Fund after the deduction of approved Class Counsel fees and litigation expenses, notice and administration costs, and approved class representative service awards



(yielding the "Net Fund"). The *pro rata* share shall be equal to the Net Fund divided by the number of total Secured Obligations. If two or more Cash Payment Eligible Class Members share a single Secured Obligation (e.g., if there are co-borrowers), those individuals shall be entitled to a single recovery per repossessed vehicle. If a Cash Payment Eligible Class Member had more than one vehicle repossessed, he or she shall be entitled to a separate recovery for each Secured Obligation. Any Cash Payment Eligible Class Member who had the same vehicle repossessed more than once shall be entitled to only one recovery per vehicle (i.e., not per repossession).

        c.    <u>Illustration</u>. If Class Counsel fees and litigation expenses are allowed in the total amount of $2,280,000 and $32,500 respectively, class representative service awards are allowed in the total amount of $20,000 (4 x $5,000), and settlement administration expenses total $37,500, the Net Fund will be $3,330,000. Projected payment for each of the approximately 2,890 Secured Obligations would be approximately $1,152.

        d.    The Settlement Administrator shall mail a check to each Cash Payment Eligible Class Member at their original address or any updated address obtained pursuant to Sections 3.02 or 4.02, with only one payment for each Secured Obligation, except a Class Member with multiple Secured Obligations and related repossessions shall recover per vehicle repossessed. If there are co-obligors, the check may be payable jointly or individually in the discretion of the Administrator, but upon request from one of the co-obligors and the return of the original check, new checks may be issued, payable to each individually for half of the sum otherwise due.



2.07.   Identification of Class Members.

The Condor Trusts represent that to the best of their knowledge, and based on First Associates' review of records of customer accounts, the Class numbers approximately 2,890 Secured Obligations and 3,245 Class Members (including 355 co-borrowers).

2.08    Electronic List.

The Condor Trusts or their designee shall prepare an electronic list for the Settlement Administrator containing the names, last known addresses, and Social Security numbers of Class Members (including co-obligors). The same list, minus Social Security numbers, shall be provided to Class Counsel. The purpose of providing Class Members' Social Security numbers is to assist the Settlement Administrator in locating valid addresses where necessary as described in Paragraphs 3.02 and 4.02 below and assist the Administrator in preparing any appropriate IRS 1099 forms. The Settlement Administrator shall update each Class Member's last known address through the United States Postal Service National Change of Address ("NCOA") database for updates within the last three years. For Class Members for whom there is no updated address in the NCOA database, the Settlement Administrator will update the last known address via a Social Security number (or equivalent personal identifier) search through the Accurint database or other equivalent database. The Condor Trusts will respond to reasonable written inquiries, if any, by Class Counsel concerning the procedures used in updating and maintaining the list of Class Members.

2.09.   Credit Reporting and Collections.

(a)    Not later than 60 days after the Distribution Date, the Condor Trusts will make a request or cause its designee, who, as stated, shall have authority to act on their behalf, to make a request to the Credit Reporting Agencies to delete from the credit files of all Class



Members (except those who redeemed their vehicle and reinstated their account) the trade line for the motor vehicle financing account at issue.  If the Condor Trusts are advised that a trade line is not deleted, it will make a second request or cause its designee to make a second request that the trade line be deleted.  After the Condor Trusts have made the requests to the Credit Reporting Agencies described above, if a Class Member disputes a Condor Trust trade line with one or more credit bureaus, the Condor Trusts shall not respond to the credit bureau's request for verification. The Condor Trusts shall have no further obligation with respect to deletion of trade lines.

        (b)    The Class Members further acknowledge that the Credit Reporting Agencies are separate entities from the Condor Trusts, and that no cause of action can or will be stated, including for breach of this Settlement Agreement, if any Credit Reporting Agency fails to amend the Class Members' credit history despite a request from the Condor Trusts, so long as the Condor Trusts perform their obligations in Section 2.09(a). The Class Members also expressly acknowledge that they understand the limitations of the Condor Trusts in this regard, and that any action, inaction, omission, or error by the credit bureaus is not and shall not be attributable to the Condor Trusts in any way and shall not constitute a breach of this Agreement.  The Condor Trusts shall not be liable to any Class Member under the Fair Credit Reporting Act, 15 U.S.C. § 1681, or similar law for requesting deletion of any Class Member's trade line as provided in this Agreement.

    2.10.   Cease and Desist Collection.

Condor Trusts shall, effective with the signing of the Settlement Agreement, promptly discontinue or cause its designee to discontinue all collection activities with respect to the Deficiency Balances of Class Members. This obligation shall not apply (a) if this Agreement is terminated for any reason, without final approval, or (b) as to each Class Member who opts out of



the Class per Section 4.01(f). The Condor Trusts represent that they have not sold or assigned any claim relating to any Deficiency Balance.

2.11.   Covenant Not to Sue.

The Condor Trusts covenant upon execution of this Agreement not to file a lawsuit seeking a Deficiency Balance against any Class Member related to a vehicle loan or finance agreement subject to this Settlement Agreement. The Condor Trusts represent that they have not filed any such lawsuit as of the execution of this Agreement. Nothing in this paragraph limits the Condor Trusts from pursuing a lawsuit related to claims, including claims for deficiency balances, arising from loans and agreements not subject to this Settlement Agreement, such as repossessions that occur after the Class Period, loans owed by Class Members who opt out of the settlement, or other obligations not involving a Class Member's Secured Obligation.

2.12   Class Members' Option to Decline Forgiveness of Deficiency Claim.

(a)   Each Class Member may affirmatively elect not to have any alleged Deficiency Balance forgiven or released by the Condor Trusts;

(b)   The Settlement Administrator shall include in the Class Notice the form entitled Election Not to Accept Deficiency Balance Debt Forgiveness ("Election Form") in the form appended to this Agreement as Exhibit B. The Election Form must be postmarked on or before the date specified in the Class Notice, which shall be forty-two days from the initial mailing of the Class Notice.

2.13.   Satisfaction of Monetary Judgments Against Class Members.

The Condor Trusts represent that they have not obtained money judgments against any Class Members arising from the Secured Obligations.



2.14.  <u>Attorneys' Fees</u>.

Class Counsel intends to apply for an award of attorneys' fees and expenses from the Settlement Fund.  All attorneys' fees and litigation expenses shall be paid from the Settlement Fund on a common fund/benefit basis, and the amounts of such fees and expenses shall not increase the amount that the Condor Trusts are required to pay under this Agreement.  The Condor Trusts agree to take no position and will not object to a request by Plaintiffs for fees to be awarded to Class Counsel in an amount not to exceed $2,280,000, plus litigation expense reimbursement not to exceed $32,500.  The amount of Class Counsel fees and expenses are subject to Court approval. Class Counsel fees approved by the Court shall also serve as compensation to Class Counsel for addressing ongoing and future Class Member inquiries concerning their repossession, deficiency balance, and trade line credit reporting after final approval.  Class Counsel fees and expenses approved by the Court shall be made within seven days after the Effective Date pursuant to wire instructions provided in writing by Plaintiffs' lead counsel, Cary Flitter, to the Settlement Administrator (with a copy to the Condor Trusts' counsel).

2.15.  <u>Individual Service Awards</u>.

The Class Representatives may apply for a service award in the amount of $5,000 each for Tara Mccalvin, Ghani Smith, Holli Wise, and James/Theresa Deviese, for an aggregate payment of $20,000.  Any service award shall be paid from the Settlement Fund.  The Condor Trusts agree not to object to this request for individual service awards.  If approved by the Court, the Administrator shall deliver separate checks payable to Tara Mccalvin, Ghani Smith, Holli Wise, and James/Teresa Deviese for the approved amount to Class Counsel on or before the Distribution Date, and upon receipt of an executed Form W-9 from the Class Representatives.  This service



award is in addition to the Class Representatives' entitlement to share in the Settlement Fund and other settlement benefits provided to all Class Members under this Settlement Agreement.

2.16.   Dismissal of Indiana Litigation

Within fourteen days of entry of the order of Preliminary Approval, the Indiana Litigation will be voluntarily dismissed.

**III.    ADMINISTRATION OF THE SETTLEMENT**

3.01.   Costs of Administration.

Costs of providing notice to the Class of the pendency and proposed settlement of the Litigation, administering this Agreement, and making the payments required under this Agreement shall be paid from the Settlement Fund.  The Settlement Administrator shall promptly respond to all queries from the Condor Trusts and Class Counsel about the calculations and payments called for by this Agreement.  The Class Administrator shall be authorized to withdraw up to $37,500 to cover its reasonable fees and expenses.

3.02.   Treatment of Class Members Who Have Moved or Died.

For Class Members whose checks mailed pursuant to Paragraph 2.06 are returned by the U.S. Postal Service for lack of current correct address, the Settlement Administrator shall seek an address correction via a Social Security number search through the Accurint database, or other equivalent database, and their checks will be re-sent to any subsequently obtained addresses. The Settlement Administrator shall have no further obligation to locate Class Members.  If the Settlement Administrator receives notice that a Class Member is deceased, the Settlement Administrator will, upon receipt of proper notification and documentation within thirty days of that notice, make any payment due to the Class Member's estate.  "Proper notification and documentation" means, in the discretion of the Administrator, a death certificate or a copy of the official filings appointing an executor, administrator, or other personal representative of the estate

17

and information sufficient to identify the name and address of the executor, administrator, or personal representative. Any payment to or on behalf of an estate must be made not later than 120 days after the Distribution Date.

3.03.   Uncashed/Unclaimed Checks.

Checks to Class Members shall be good for 120 days from the date the check is mailed, and that "stale date" shall be stated on the check. Approximately sixty days after mailing settlement checks, the administrator shall send a "reminder" letter to each Cash Payment Eligible Class Member who has not cashed or negotiated the settlement check, advising that the check will go stale in approximately sixty more days and urging the Class Member to act promptly. Class Members who are not located or whose checks are not cleared within 120 days after the mailing of the check shall be ineligible to share in the Settlement Fund, but shall be eligible for the non-cash benefits of this settlement.

3.04.   Notification to Class Counsel and Condor Trusts' Counsel.

Approximately 130 days after the Distribution Date, the Settlement Administrator shall notify Class Counsel and Condor Trusts' counsel in writing of the number of Class Members, the number of Class Members to whom checks were sent, the number of Class Members who did not cash the checks, the total dollar amount of the checks distributed, the total dollar amount of uncashed checks, and the remaining balance of the Settlement Fund, after accounting for interest (if any), bank fees, and other administration expenses.

3.05.   *Cy Pres*.

Approximately 160 days after the Distribution Date, unless Plaintiffs have requested from the Court leave to effect a second distribution, the balance of the Settlement Fund shall be disbursed as follows: (a) one-third shall be paid to the National Legal Aid and Defenders



Association, Washington, D.C.; (b) one-third shall be paid to the Community Legal Services of Philadelphia, PA; and (c) one-third shall be paid to the National Consumer Law Center, Boston, MA. The residual funds so distributed are to be used for consumer credit education and counselling, foreclosure prevention, and advocacy on behalf of low-income consumers. The Settlement Administrator shall deliver the check or checks payable to the *cy pres* recipients directly to the recipients. The delivery of the *cy pres* checks to the recipients shall be copied to Class Counsel and counsel for the Condor Trusts. Promptly after the *cy pres* checks have cleared, the Settlement Administrator shall close the account at PNC Bank.

3.06. <u>Certification of Distribution</u>.

Within twenty-one days after the final distribution of all portions of the Settlement Fund, the Settlement Administrator shall provide to Class Counsel an affidavit attesting that the distributions provided for by this Agreement have all been timely made, and shall serve a copy on the Condor Trusts' counsel. Class Counsel shall file the affidavit with the Court.

## IV. CLASS SETTLEMENT PROCEDURES

4.01. <u>Motion for Preliminary Approval</u>.

Class Counsel shall file a motion for Preliminary Approval of the proposed settlement within 10 days of execution of this Agreement by all Parties. The Condor Trusts agree not to oppose, except as allowed in this Agreement, the entry of an order of Preliminary Approval in the form annexed as Exhibit A, providing, among other things:

(a) That the settlement appears that it may be within the range of reasonableness and that notice of the proposed settlement should be given to the Class;

(b) That the requirements for certification of a Class for settlement purposes have been satisfied, and this action shall be maintained and proceed as a class action for settlement purposes only pursuant to FED. R. CIV. P. 23;

(c) That the notice of proposed class action settlement substantially in the form attached as Exhibit C is approved by the Court; and that the mailing of the Class

19



Notice in the manner and form set forth in the Order meets all the requirements of FED. R. CIV. P. 23 and any other applicable law, constitutes the best notice practicable under the particular circumstances of this case, and shall constitute sufficient notice to all persons entitled to it;

(d)   That deadlines shall be established for mailing Class Notices, filing any objections and requests to opt out of the settlement, and filing any papers in connection with the Final Approval Hearing and the consideration of the approval or disapproval of the Settlement Agreement;

(e)   That any objections by Class Members to: (i) the proposed settlement, or (ii) the entry of the Final Approval Order, shall be heard and any papers submitted in support of such objections shall be considered by the Court at the Final Approval Hearing only if, on or before a date (or dates) specified in the Class Notice and the Preliminary Approval Order, the objector files with the Court a notice of his or her intention to appear, and states the basis for such objections. Any objection shall be postmarked or electronically filed with the Clerk on or before the date specified in the Class Notice, which shall be forty-two days from the date of the initial mailing of the Class Notice. The objector shall mail copies of any objection to Class Counsel and counsel for the Condor Trusts and the Settlement Administrator;

(f)   That any person who wishes to opt out of the settlement shall mail a notice of intention to opt out to the Settlement Administrator on or before a date specified in the Class Notice and the Preliminary Approval Order (forty-two days from the date of the initial mailing of the Class Notices). The notice of intention to opt out shall: (i) set forth the Class Member's full name, current address, and telephone number; (ii) contain the signatures of each Class Member obligated on the motor vehicle loan or installment sale agreement; and (iii) state an intent of all signatories not to participate in the settlement;

(g)   That Plaintiffs' motion for final approval, for approval of service awards for the Class Representatives, and for an award of Class Counsel fees and expenses, shall be filed at least 14 days before the Final Approval Hearing;

(h)   That the Preliminary Approval Order substantially in the form of Exhibit A to the Settlement Agreement is approved;

(i)   That a hearing or hearings ("Final Approval Hearing") shall be held before the Court, at the time and date to be set by the Court, to consider whether the proposed settlement, including the payment of Class Counsel's attorneys' fees and reimbursement of expenses, is fair, reasonable, and adequate and should be approved by the Court, and whether the judgment approving the settlement and dismissing the Pennsylvania Litigation on the merits and with prejudice against the Class Representatives and the Class Members should be entered, and to consider such other matters as may properly come before the Court in connection with the Final Approval Hearing;



(j)     That the Final Approval Hearing may, from time to time and without further notice to the Class (except those who filed timely objections), be continued or adjourned by order of the Court;

(k)     That all Class Members (except those who timely excluded themselves) will be bound by the Final Approval Order.

4.02.   Notice of Class Settlement.

Subject to the Court's approval, the Parties agree that notice to the Class Members shall be given by the Settlement Administrator in the form attached hereto as Exhibit C within twenty-one days after Preliminary Approval in the following manner: (a) the Condor Trusts shall supply an address list of the Class Members (including co-obligors), and the Settlement Administrator shall update the address list as set forth in paragraph 2.08; (b) the Settlement Administrator shall mail the notice as approved by the Court by first-class United States mail to the updated addresses; (c) if a mailed notice is returned with a forwarding address provided by the Postal Service, the Settlement Administrator will re-mail it to the forwarding address; (d) if a mailed notice is returned without a forwarding address, or is otherwise designated by the Postal Service as bearing an invalid address, the Settlement Administrator shall use the Accurint database, or other equivalent database, to attempt to locate an updated address for the particular Class Member, and shall re-mail the notice to the Class Member at the updated address (if one is obtained).  If a notice is returned after such address update and re-mailing, and no current address is reasonably available to the Administrator, the notice shall be deemed "undeliverable."

4.03.   Opting Out and Forgiveness of Deficiency Balance.

(a)     The Class Notice described in Paragraph 4.02 above shall permit any Class Member to elect not to be part of the Class and not to be bound by this Agreement if the affected person mails a timely opt-out notice to the Settlement Administrator.  The notice of intention to opt out shall: (i) set forth the Class Member's full name, current address, and telephone number; (ii)



contain the signatures of each Class Member obligated on the motor vehicle loan or installment sale agreement; and (iii) state an intent of all signatories not to participate in the settlement. The notice of intention to opt out must be postmarked on or before the date specified in the Class Notice, which shall be forty-two days after the mailing of the Class Notices. No Class Member, or proxy, may exclude any other Class Member. At least twenty-one days before the Final Approval Hearing, the Settlement Administrator shall prepare a list of the persons who have complied with the requirements for exclusion from the Class and shall serve the list upon Class Counsel and Condor Trusts' counsel, and Class Counsel shall file the list with the motion for final approval. Upon the entry of the Final Approval Order, the persons who timely and properly requested exclusion from the Class will not be considered Class Members for purposes of this Agreement.

(b)     The Class Notice shall also explain in plain language that payment of the cash component of the settlement will result in issuance of an IRS form 1099, and that the forgiveness of any Deficiency Balance may result in the issuance of IRS form 1099. This could potentially result in the Class Member incurring a tax obligation for cancellation of indebtedness income under IRS Reg. 1.6050P. As such, each Class Member will have the option to decline waiver of the Deficiency Balance. A form of "Election Not to Accept Deficiency Balance Debt Forgiveness" is appended as Exhibit B.

4.04.   <u>Order and Final Judgment</u>.

Before the Final Approval Hearing, Plaintiffs shall request, with the Condor Trusts' concurrence, that the Court approve the settlement and enter judgment in accordance with this Agreement, substantially in the form attached as Exhibit D.



4.05.   Settlement Administrator.

The Settlement Administrator shall, by virtue of its voluntary appointment, deem itself subject to the jurisdiction of the Court for purposes of its administration of the settlement and the Pennsylvania Litigation.

V.   **RELEASES**

5.01.   Release as to the Class.

On the Effective Date, the Class Representatives and all Class Members, by operation of this Release and the Final Approval Order, fully, finally, and forever release and discharge all of the Released Persons from all Settled Claims and, without further action by any person, shall be deemed (a) to have consented to the dismissal with prejudice of all Settled Claims; (b) to have released and forever discharged all Settled Claims as set forth in ¶ 1.17; and (c) to be forever barred and enjoined from instituting or further prosecuting, in any forum whatsoever, including but not limited to any state, federal, or foreign court or regulatory agency, any Settled Claim.

5.02.   Release as to the Condor Trusts.

On the Effective Date, the Condor Trusts release and discharge all Class Members with a Deficiency Balance (except for any Class Members who signed an Election Form), including the Class Representatives, their agents, attorneys, heirs, and assigns, from all claims, liens, demands, causes of action, obligations, damages, and liabilities of any nature whatsoever, known or unknown, that they have had in the past, or now have, or may have in the future against the Class Member arising from or related to the motor vehicle retail installment sales contracts associated with the repossessions addressed by the Litigation.  The Condor Trusts represent that, to the best of their knowledge after reasonable investigation, they presently own, or have full servicing rights related to and have the right to fully forgive and discharge any Deficiency Balance, on all Class Members' accounts.  If any account has been assigned or sold, the Condor Trusts will satisfy any

deficiency obligation or judgment per this paragraph as with any other account. The release in this paragraph shall not apply to any Class Member who reinstated their account or reclaimed or obtained the return of their vehicle following repossession and who thereby does not have a Deficiency Balance.

     5.03.  <u>Unknown Claims or Losses</u>.

     The Class Representatives and the Condor Trusts expressly understand and acknowledge that it is possible that unknown losses or claims exist or that present losses may have been underestimated in amount or severity. The Class Representatives and the Condor Trusts explicitly took that possibility into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained in this Agreement, having been bargained for between the Class Representatives and the Condor Trusts with the knowledge of the possibility of such losses or claims, was given in exchange for a full discharge of all such losses or claims.

     5.04.  <u>Release Summary</u>.

     On the Effective Date, the Class Members shall be deemed to have covenanted and agreed that, upon Condor Trusts' compliance with the terms of this Agreement: (1) Class Members shall be forever barred from instituting, maintaining, or prosecuting against the Condor Trusts or the Released Persons any Settled Claim; and (2) the Condor Trusts and any Released Persons shall be forever released and discharged from any and all liability with respect to any Settled Claim.

## VI.  QUALIFIED SETTLEMENT FUND

     6.01.  <u>Definition</u>.

     The Settlement Fund shall constitute a "qualified settlement fund" ("QSF") within the meaning of Treasury Regulation Section 1.468B-1 promulgated under Section 468B of the Internal Revenue Code of 1986 as amended. The Settlement Administrator shall be the "administrator" within the meaning of Treasury Regulation §1.468B-2(k)(3).

6.02.  <u>Employer Identification Number</u>.

Upon or before establishment of the QSF, the Settlement Administrator shall apply for an employer identification number for the QSF utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation §1.468B-2(k)(4).

6.03.  <u>Relation-Back</u>.

If requested by either the Condor Trusts or the Settlement Administrator, the Settlement Administrator and the Condor Trusts shall fully cooperate in filing a relation-back election under Treasury Regulation §1.468B-1(j)(2) to treat the QSF as coming into existence as a Settlement Fund as of the earliest possible date.

6.04.  <u>The Condor Trusts' Obligations After Making Deposit</u>.

Following its deposit as described in Paragraph 2.06 of this Agreement, the Condor Trusts shall have no responsibility, financial obligation, or liability whatsoever with respect to the notifications to Class Members required under this Agreement (except to provide its best and latest location data), the processing of claims and opt out letters, the allowance or disallowance of claims by Class Members, payments to Class Counsel, investment of QSF funds, payment of federal, state, and local income, employment, unemployment, excise, and any other taxes, penalties, interest, or other charges related to taxes imposed on the QSF or its disbursements, payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the QSF, since the deposit shall fully discharge the Condor Trusts' obligation to Plaintiffs, Class Members, Class Counsel, and expenses of administration with respect to the disposition of the Settlement Fund.

Condor Trusts and Condor Trusts' counsel shall have no responsibility for or liability with respect to the investment, allocation, or distribution of the Settlement Fund, the administration,



calculation, or payment of claims, or the payment or withholding of any taxes, penalties, interest, or any other charges related to taxes, as to the Settlement Fund, the Class Members, the Class Representatives, or any other person, or relating to the distribution, transfer, or payment of the Settlement Fund to the Class Members or any other person. These functions, including issuance of tax forms (including any Form 1099-series return, if necessary) to Class Members for cash payments, will be conducted by the Settlement Administrator under the direction of Class Counsel in accordance with this Settlement Agreement.

6.05.   Administration Tax Obligations.

The Settlement Administrator shall file or cause to be filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns, including any Form 1099-series return, and tax withholdings statements, in accordance with the provisions of Treasury Regulation §1.468B-2(k)(1) and Treasury Regulation §1.468B-2(l)(2)(ii). Any contract with the Settlement Administrator relating to the QSF shall require the Settlement Administrator or its agent to undertake these tasks. The Settlement Administrator may, if necessary, and approved by Class Counsel, secure the advice of a certified public accounting firm in connection with its duties and tax issues arising under this provision. The reasonable cost for such certified public accountant shall be allowed from the Settlement Fund, in an amount not to exceed $10,000.

## VII.   MISCELLANEOUS PROVISIONS

7.01.   Parties to Use Best Efforts to Effectuate Settlement.

The Parties' counsel shall use their best efforts to cause the Court to give Preliminary Approval to this Agreement as promptly as practicable, to take all steps contemplated by this



Agreement, to effectuate the settlement on the stated terms and conditions and to obtain approval of this Agreement.

    7.02.   <u>Venue</u>.

This Agreement is intended to and shall be governed by the laws of the Commonwealth of Pennsylvania without regard to conflict of laws rules. This Agreement shall be enforced in the United States District Court for the Eastern District of Pennsylvania. The Condor Trusts and Class Members waive any objection that any such party may have or hereafter may have to the personal jurisdiction or venue of any such action.

    7.03.   <u>Entire Agreement</u>.

The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement. The Parties further intend that this Agreement constitutes the complete and exclusive statement of these terms as between the Parties and that no extrinsic evidence may be introduced in any judicial proceeding, if any, involving the meaning of this Agreement.

    7.04.   <u>Modification Only in Writing</u>.

This Agreement may be amended only in a writing signed by the Parties or counsel for all Parties. This Agreement may not be orally amended.

    7.05.   <u>No Ambiguity to be Construed in Favor of Any Party</u>.

The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties. Accordingly, no ambiguity shall be construed in favor of or against any of the Parties.



7.06.   Successors.

This Agreement shall be binding upon, and inure to the benefit of, the respective heirs, successors, and assigns of the Parties.

7.07.   Waivers.

The waiver by one Party of any provisions or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

7.08.   Counterparts.

This Agreement shall become effective upon its execution by all of the undersigned.  The Parties may execute this Agreement in counterparts, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

7.09   Retention of Jurisdiction.

The Court shall retain jurisdiction over the interpretation, effectuation, and implementation of this Agreement and all orders entered in connection therewith; the Parties and their attorneys submit to the jurisdiction of the Court.

7.10   Taxes.

a.   Nothing in this Agreement shall itself be construed as creating a cancellation of debt or of itself giving rise to any "identifiable event" under the Internal Revenue Code or Regulations relating to Cancellation of Indebtedness.

b.   The Parties and their counsel have provided no tax advice with respect to the terms of this settlement.  In all events the Condor Trusts shall have no liability or responsibility for any potential tax liability incurred by any Class Member or Class Representative arising from cancellation of indebtedness, nor any taxes, penalties, interest, or any other charges related to taxes.

28



c.     The Settlement Administrator shall cause any proper Form 1099-series or comparable tax document to issue, if required by the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, for the cash distributions to the Class Members over $600.

7.11.   <u>No Opt Out Solicitation or Inducement</u>.

Plaintiffs, Class Counsel, the Condor Trusts, and Condor Trusts' counsel agree that they shall take no action to induce or encourage any person included in the Class to seek exclusion from the Class, provided that this provision shall not restrict Class Counsel from providing appropriate legal advice in response to inquiries from Class Members.

The undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

29



APPROVED AS TO FORM:

Dated: _6/22/18_

By: _____
Class Counsel

Dated: _6/21/18_

By: _____
Condor Trusts' Counsel

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____

_____
Tara Mccalvin

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____

_____
Ghani Smith

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____

_____
Holli Wise

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _6/22/18_

_____
James C. Deviese

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _6/22/18_

_____
Teresa Deviese

Dated: _6/21/2018_

Condor AssetCo Securitization Trust

By: CALS Investors, LLC, as its Administrator

By: _____

30

APPROVED AS TO FORM:

Dated: _____     By: _____
                                       Class Counsel

Dated: _____     By: _____
                                       Condor Trusts' Counsel

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: 6|19|2018                 _Tara Mccalvin_
                                 Tara Mccalvin

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____   _____
                                 Ghani Smith

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____   _____
                                 Holli Wise

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____   _____
                                 James C. Deviese

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____   _____
                                 Teresa Deviese

Dated: _____   Condor AssetCo Securitization Trust

                                 By: CALS Investors, LLC, as its Administrator

                                 By:_____

APPROVED AS TO FORM:

Dated: _____      By: _____
                                    Class Counsel

Dated: 6/21/18                   By: _____
                                    Condor Trusts' Counsel

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____      _____
                                Tara Mccalvin


AGREED TO AND ACCEPTED:
*Class Representative*

Dated: 06/28/18                 _____
                                *Ghani Smith (Jun 28, 2018)*
                                Ghani Smith


AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____      _____
                                Holli Wise

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____      _____
                                James C. Deviese

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____      _____
                                Teresa Deviese


Dated: 6/21/2018                Condor AssetCo Securitization Trust

                                By: CALS Investors, LLC, as its Administrator

                                By: _____

30

APPROVED AS TO FORM:

Dated: _____

By: _____
    Class Counsel

Dated: _____

By: _____
    Condor Trusts' Counsel

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____

_____
Tara Mccalvin

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____

_____
Ghani Smith

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: 6/20/2018

_____
Holli Wise

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____

_____
James C. Deviese

AGREED TO AND ACCEPTED:
*Class Representative*

Dated: _____

_____
Teresa Deviese

Dated: _____

Condor AssetCo Securitization Trust

By: CALS Investors, LLC, as its Administrator

By:_____

30

Name: Wayne Cohen
Title: Authorized Person

Dated: 6/21/2018

Condor Recovery Securitization Trust

By: CALS Investors, LLC, as its Administrator

By: _____
     Name: Wayne Cohen
     Title: Authorized Person

Dated: 6/21/2018

Condor HoldCo Securitization Trust

By: CALS Investors, LLC, as its Administrator

By: _____
     Name: Wayne Cohen
     Title: Authorized Person

31

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TARA MCCALVIN, GHANI SMITH, HOLLI WISE, JAMES C. DEVIESE and THERESA DEVIESE<br><br>*on behalf of themselves and all others similarly situated*<br>Plaintiffs,<br><br>vs.<br><br>CONDOR HOLDCO SECURITIZATION TRUST, CONDOR ASSETCO SECURITIZATION TRUST & CONDOR RECOVERY SECURITIZATION TRUST,<br>Defendants. | CLASS ACTION<br><br><br>CIVIL ACTION NO. 17-cv-01350(TJS) |

ORDER OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT, PRELIMINARY DETERMINATION ON CLASS CERTIFICATION, AND DIRECTING THE ISSUANCE OF NOTICE TO THE CLASS

AND NOW, this         day of                      , 2018, this Court has before it a

proposed class action settlement.  Having reviewed the Class Action Settlement Agreement and

Release, having read Plaintiffs' Motion for Preliminary Approval of Class Settlement, Preliminary

Determination on Class Certification, and for the Issuance of Notice to the Class, having been

advised that Defendants join in the relief requested, and based specifically upon the facts and

circumstances at issue in the present case, the Court hereby ORDERS as follows:

1.    **Summary of Claims and Defenses:**

The Plaintiffs in this lawsuit claim that Defendants Condor HoldCo Securitization Trust,

Condor AssetCo Securitization Trust, and Condor Recovery Securitization Trust (the "Trusts" or

"Defendants") violated Pennsylvania's and other states' Uniform Commercial Codes ("UCC") by

failing to send borrowers proper notice of disposition of collateral ("Repossession Notice") after

repossession of their vehicles.  Plaintiffs assert on behalf of themselves and the Class that the

Repossession Notices did not give proper notice about the description of the secured party, the method of disposition, the time and place of any public sale of the vehicle, and the right to request an accounting. E.g., 13 Pa. C.S. §§ 9611, 9614. Defendants deny that they violated any laws and dispute Plaintiffs' entitlement to any relief under the UCC or otherwise.

    2.    **Class Findings.**

    a)    The findings below are made pursuant to Fed. R. Civ. P. 23(c)(1) and in the context of the proposed settlement of this action.

    b)    The numerosity requirement of Fed. R. Civ. P. 23(a)(1) is satisfied because there are approximately 2,890 secured obligations involved in this case, and approximately 3,245 Class Members. Thus, the Class is so numerous that joinder would be impracticable.

    c)    The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied because members of the Class share at least one common factual or legal issue, namely (i) whether the Trusts failed to send a Notice of Disposition of Collateral ("Notice") required by the Uniform Commercial Code after repossessing a vehicle; (ii) whether the Trusts' Notice was unreasonable under the UCC; and (iii) the calculation of statutory damages.

    d)    The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied because each Class Member was a party to a finance contract assigned to one of the Trusts; each member of the Class had a vehicle repossessed by or at the direction of the Trusts; and each member of the Classes was sent an allegedly defective Notice, or no Notice.

    d)    The adequacy requirement of Fed. R. Civ. P. 23(a)(4) is satisfied in that (i) the interests of the Plaintiffs and the nature of their claims are consistent with those of other members of the Class, (ii) there appear to be no significant conflicts between or among the Plaintiffs and the Class Members, and (iii) the Plaintiffs and the Class Members are represented by several qualified

2



law firms who have been certified as Class Counsel in many similar matters, and which, to date, have advanced litigation costs on behalf of Plaintiffs and the Class, have agreed to continue to do so, and are experienced in preparing and prosecuting consumer class actions such as this. Plaintiffs and their counsel will fairly and adequately assert and protect the interest of the Classes.

     e)     The Court has also considered the provisions of Fed. R. Civ. P. 23(g)(1) and finds that Class Counsel has identified the proper issues, is sufficiently experienced and knowledgeable about applicable laws, and has adequate resources to commit to the Litigation.

     f)     The requirement of Fed. R. Civ. P. 23(b)(3) that a class action for settlement purposes provides a fair and efficient method for the resolution of the controversy is satisfied, and class treatment for settlement purposes is a superior method to other available methods for a fair and efficient resolution of the Class's claims.

     g)     Common issues of law and fact alleged by Plaintiffs predominate over any potential individual issues, including the alleged common issue of whether form letters sent by Defendants comply with the UCC.

     h)     In so ruling, the Court has also given consideration to, among other factors: (i) the interests of Class Members in individually controlling the prosecution of separate actions for modest sums; (ii) the extent and nature of any litigation concerning these claims already commenced; (iii) the desirability of concentrating the litigation of the claims in this forum; and (iv) the impracticability or inefficiency of prosecuting or defending separate actions. Fed. R. Civ. P. 23(b)(3).

     i)     Because this action is being settled rather than litigated, the Court need not consider manageability issues that might be presented by the trial of a class action involving the issues in this case. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

3



3. **The Class, Class Representatives, and Class Counsel.**

a) The Class is defined as all persons in the United States:

   (1) who financed a vehicle primarily for consumer use, whose consumer loan contract or installment sales contract was assigned to the Trusts or one of them;

   (2) from whom the Trusts, or one of them or their designee, repossessed the financed vehicle, or ordered it repossessed;

   (3) who were sent a Notice of Our Plan to Sell Property from the Trusts or similar document which failed to;

      (i)   state the method of disposition, *viz.*, whether a public auction or private sale;

      (ii)  list the time and place of any public sale of the vehicle;

      (iii) describe precisely the name and address of the secured party; or

      (iv) state that the borrower has the right to an accounting;

   (4) or, who were sent no notice at all;

   (5) from November 23, 2015 through March 28, 2018.

b) Tara Mccalvin, Ghani Smith, Holli Wise, James C. Deviese and Theresa Deviese are appointed as representatives of the Class ("Representative Plaintiffs").

c) Cary L. Flitter, Andrew M. Milz, Jody Thomas López-Jacobs, and Flitter Milz, P.C.; Seth Lesser, Michael Reed, and Klafter Olsen & Lesser LLP; Robert W. Murphy and the Murphy Law Firm; and Robert E. Duff and the Indiana Consumer Law Group are appointed as counsel to the Class ("Class Counsel").

4. **Findings Regarding Proposed Settlement.** The Court finds that: (a) the proposed settlement resulted from extensive arm's-length negotiations. The proposed settlement was concluded only after a full year of litigation, review of thousands of documents and tens of thousands of data points pertaining to the Class, multiple depositions, participation in weeks of

4



informal settlement negotiations between counsel, two full days of mediations with a retired judge, and through the completion of briefing on Plaintiffs' Motion for Class Certification; (b) the proposed settlement of this action provides, on preliminary review, for direct and substantial cash payments to Class Members, forgiveness of alleged Deficiency Balances, as well as equitable-type relief in correction of credit reports; and (c) the proposed settlement appears, on preliminary determination, to be reasonable, adequate, and sufficient to warrant sending notice of this action and the proposed settlement to the Class Members, and holding a final hearing on the proposed settlement.

5.      **Final Approval Hearing.** A hearing (the "Final Approval Hearing") will be held on _____, 2018, at _____, M. in Courtroom ___, United States Courthouse, 601 Market Street, Philadelphia, PA, to determine:

a)      Whether the proposed settlement should be finally approved as fair, reasonable, and adequate;

b)      The propriety of any objection and the identity of any opt-outs;

c)      Whether this action should be dismissed with prejudice pursuant to the terms of the settlement;

d)      Whether Class Members should be bound by the release set forth in the proposed settlement; and,

e)      Whether Plaintiffs' application for an award of Class Counsel fees and litigation expenses and Representative Plaintiffs' application for service awards should be approved. Plaintiff's motion for final approval, for approval of Class Representative service awards, and for an award of Class Counsel fees and litigation expenses shall be filed at least fourteen days before the Final Approval Hearing.

5



6.     **Pre-Hearing Notices to Class Members.**  Subject to the terms of the Settlement Agreement, an independent, third-party class action administrator, American Legal Claim Services, LLC of Jacksonville, Florida (the "Settlement Administrator"), shall provide Class Members with notice in the manner set forth below.  By accepting this assignment, the Settlement Administrator subjects itself to this Court's jurisdiction.

7.     **Notice by Mail.**  The Settlement Administrator shall mail the Class Notice (with proper dates filled in) substantially in the form filed with this Court as Exhibit C to the Settlement Agreement to the last known address of each potential Class Member as reflected on the Condor Trusts' current and reasonably accessible records, and updated by the Administrator using the Postal Service National Change of Address database, and/or the Accurint database or other equivalent database, as necessary.  The Class Notice shall be sent by first-class mail, postage prepaid, no later than twenty-one days following the entry of this order.

8.     **Proof of Mailing.**     Before the Final Approval Hearing, the Settlement Administrator shall submit to Class Counsel and the Condor Trusts' counsel an affidavit of mailing of the Class Notice.  Class Counsel shall docket the affidavit promptly.

9.     **Findings Concerning Notice.**  The Court finds that notice in the form and manner provided in this order is the best practicable notice and is reasonably calculated, under the circumstances, to apprise Class Members (i) of the settlement of this action, (ii) the optional deficiency cancellation (and potential tax ramifications); (iii) of their right to exclude themselves from the Class and the proposed settlement, (iv) that any judgment, whether favorable or not, will bind all Class Members who do not request exclusion, and (v) that any Class Member who does

6



not request exclusion may object to the settlement and, if he or she desires, enter an appearance personally or through counsel.

The Court further finds that the Class Notice is written in plain English and is readily understandable. In sum, the Court finds that the proposed notice and methodology for giving notice are reasonable, that they constitute due and sufficient notice to all persons entitled to notice, and that they meet the requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and other applicable law. The Court further finds that disclosure of personal identifying data concerning Class Members to the Settlement Administrator is necessary for implementing the proposed notice program, and authorizes the Condor Trusts or their designee to disclose such data to the Settlement Administrator.

10. **Exclusion from Class.** Any Class Member who wishes to be excluded from the Class must send a written request for exclusion to the Settlement Administrator at the address provided in the Class Notice. Any such exclusion request must be sent by first-class mail, postage prepaid, and must be postmarked no later than a date forty-two days after the Class Notice is mailed. The request for exclusion shall (i) set forth the Class Member's full name, current address, and telephone number; (ii) contain the signatures of each Class Member obligated on the motor vehicle loan or installment sale agreement; and (iii) state an intent of all signatories not to participate in the settlement. If the proposed settlement is approved, any Class Member who has not submitted a timely, written request for exclusion from the Class shall be bound by all subsequent proceedings, orders, and judgments in this action.

11. **Objections and Appearances.**

a) **Written Objections.** Any Class Member who does not file a timely, written request for exclusion and who complies with the requirements of this paragraph may object to any

7



aspect of the proposed settlement, including the fairness, reasonableness, or adequacy of the proposed settlement, the adequacy of the Class's representation by the Class Representatives or Class Counsel, the award of attorneys' fees and expenses, and/or the individual settlement awards to the Class Representatives. A Class Member may assert such objections either on his or her own or through an attorney hired at his or her expense. To object, the Class Member must file an objection, or send a letter saying that he or she objects to the settlement in *Mccalvin v. Condor Holdco Securitization Trust*, No. 17-cv-1350. Any objection must state why the objector thinks the Court should not approve the settlement. The objection must include the name, address, telephone number, email address if available, and signature of the objector. The objection must be docketed and also mailed to all three places set forth below, postmarked no later than forty-two days from the date of the Class Notice.

| **Settlement Administrator** | **Class Co-Counsel** | **Condor Trusts' Counsel** |
|---|---|---|
| Mccalvin v. Condor Trusts Repo Settlement c/o American Legal Claim Services, LLC P.O. Box 23369 Jacksonville, FL 32241-3369 | Cary L. Flitter, Esq. FLITTER MILZ, P.C. 450 N. Narberth Avenue Suite 101 Narberth, PA 19072 | Eric S. Mattson, Esq. SIDLEY AUSTIN LLP One South Dearborn St. Chicago, IL 60603 |

      b)    **Other Objections.** Any Class Member who does not timely file with the Court and serve a written objection complying with the terms of this paragraph shall be deemed to have waived any objection, and shall be foreclosed from raising any objection to the settlement. Any untimely objection shall be barred, absent extraordinary circumstances.

      c)    **Notice of Appearance.** If a Class Member hires an attorney, the attorney must file a notice of appearance with the Office of the Clerk, and deliver a copy of that notice to the Condor Trusts' counsel and to Class Counsel, at the addresses set forth in paragraph 11(a) of this Order.

8



Counsel must receive any such notices of appearance contemporaneously with submission to the Court.

d)    **Appearance at Final Approval Hearing.** Any Class Member who files and serves a timely, written objection pursuant to the terms of paragraph 11 of this order and complies with the requirements of this paragraph may also appear and be heard at the Final Approval Hearing either in person or through counsel retained at the Class Member's expense. Class Members or their attorneys intending to appear and be heard at the Final Approval Hearing must deliver to the Court, the Condor Trusts' counsel and Class Counsel, at the addresses specified in paragraph 11(a) of this Order, a notice of intention to appear. setting forth the case number and the name, address, and telephone number of the Class Member (and, if applicable, the name of the Class Member's attorney). Notices of intention to appear must be postmarked no later than forty-two days from the date of the mailing of the Notice. Any Class Member who does not timely file and serve a notice of intention to appear pursuant to the terms of this paragraph shall not be permitted to appear and be heard at the Final Approval Hearing, except for good cause shown.

12.    **Termination of Settlement.** This order shall become null and void, and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this order, if (a) the proposed settlement is not finally approved by the Court, or does not become final, pursuant to the terms of the Settlement Agreement; or (b) the proposed settlement is terminated in accordance with the Settlement Agreement or does not become effective as required by the terms of the Settlement Agreement for any other reason. If that happens, the proposed settlement and Settlement Agreement shall become null and void and be of no further force and effect (except as expressly



provided in the Settlement Agreement), and neither the Settlement Agreement nor this Order shall prejudice either party.

13.   **Use of Order.**   This order shall not be construed or used as an admission, concession, or finding by or against the Condor Trusts of any fault, wrongdoing, breach, or liability, or of the appropriateness or permissibility of certifying a class if certification were contested, or for any purpose other than settlement.  Nor shall the order be construed or used as an admission, concession, or finding by or against the Class Representatives or the Class Members that their claims lack merit or that the relief requested in their pleadings is inappropriate, improper, or unavailable, or as a waiver by any Party of any defenses or claims he, she, or it may have.

14.   **CAFA Notice.**   Defendants shall issue the notices as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

15.   **Continuance of Hearing.**   The Court reserves the right to continue the Final Approval Hearing without further written notice to the absent Class Members (except those who filed timely objections).

BY THE COURT:

_____
U.S.D.J.



# EXHIBIT "B"

## Condor Trusts Settlement

## Election Not to Accept Deficiency Balance Debt Forgiveness

Please complete this form if you **do not want** Condor Holdco Securitization Trust, Condor Assetco Securitization Trust, and Condor Recovery Securitization Trust (the "Trusts") to forgive and eliminate the Deficiency Balance that the Trusts say is due from you following the auction sale of your vehicle. You do not need to submit this form to receive the cash and credit reporting benefits of the settlement or if you want your debt to be forgiven.

| Name | | |
|------|------|------|
| Street | | |
| City | State | Zip |
| Phone | Email | |

I declare that I am the Class Member in the Condor Trusts Settlement and I **do NOT want** the Trusts to forgive the remaining debt on my auto loan account.

_____          _____
Signature                                        Date

You must return this form postmarked by _____, **2018** to:

**Mccalvin v. Condor Trusts Settlement**
**c/o American Legal Claim Services, LLC**
**P.O. Box 23369**
**Jacksonville, FL 32241-3369**

# EXHIBIT "C"

[FONT AND TYPE SIZE TO BE SET BY SETTLEMENT ADMINISTRATOR]

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TARA MCCALVIN, GHANI SMITH, HOLLI WISE, JAMES C. DEVIESE and THERESA DEVIESE, *on behalf of themselves and all others similarly situated* <br><br> Plaintiffs, <br><br> vs. <br><br> CONDOR HOLDCO SECURITIZATION TRUST, CONDOR ASSETCO SECURITIZATION TRUST, and CONDOR RECOVERY SECURITIZATION TRUST, <br> Defendants. | CIVIL ACTION NO. 17-cv-01350(TJS) |

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**You may be entitled to receive cash and cancellation of any Deficiency Balance in connection with a class action against Condor Holdco Securitization Trust, Condor Assetco Securitization Trust, and Condor Recovery Securitization Trust**

*A Federal Court has authorized this notice.*
*This is not a solicitation from a lawyer.*
*You are not being sued.*

- A proposed settlement would resolve a lawsuit over whether Condor Holdco Securitization Trust, Condor Assetco Securitization Trust, and Condor Recovery Securitization Trust (the "Trusts") sent borrowers proper notice of their legal rights after their cars were repossessed.

- The Trusts deny the claims asserted in the Litigation. The parties disagree about whether any money (and if so, how much) could have been awarded to you if the Plaintiffs won the case.

- If approved by the judge, this settlement would (a) provide $5.7 million to be distributed to Class Members after payment of administrative costs and Class Counsel fees and expenses, (b) forgive post-repossession deficiency balances, and (c) require the Trusts to seek the removal of negative credit reporting.

- Your rights are affected whether you act or not. Read this notice carefully.

## Your Legal Rights and Options in this Settlement:

| | |
|---|---|
| **Do Nothing** | You will be paid a share of the net settlement proceeds which will consist of **approximately $1,150 per loan in cash to you**, and also have your debt to the Condor Trusts forgiven for the transactions at issue, and also have corrections made to your credit report. |
| **Exclude Yourself** | If you exclude yourself, you will get no payment, will not have your debt forgiven and will not have corrections made to your credit report. This is the only option that allows you to ever be part of any other lawsuit against the Trusts concerning repossession or financing of your vehicle.  Act by _____, 2018 |
| **Object** | Write to the Court about why you do not like the settlement and do not want it approved.  You need to act by _____, 2018 |
| **Go to a Hearing** | Unless you exclude yourself, you can ask to speak in Court about the fairness of the settlement on _____, 2018.  You do not need to go to the hearing in order to get paid or be a part of this settlement. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement.  Payments will be made if the Court approves the settlement and after any appeals are resolved.  Please be patient.

## WHAT THIS NOTICE CONTAINS

**Page**

BASIC INFORMATION ........................................................................................................ 1
    1.    Why did I get this notice package? ....................................................... 1
    2.    What is this lawsuit about? .................................................................. 1
    3.    Why is this a class action? .................................................................. 1
    4.    Why is there a settlement? .................................................................. 1

WHO IS IN THE SETTLEMENT ........................................................................................... 2
    5.    How do I know that I am part of the settlement? .................................. 2

THE SETTLEMENT BENEFITS – WHAT YOU GET .............................................................. 2
    6.    What does the settlement provide for me? ............................................ 2
    7.    What is the debt forgiveness benefit? ................................................... 3

TAX IMPLICATIONS ......................................................................................................... 3
    8.    Tax Implications ................................................................................. 3

HOW YOU GET THE BENEFITS OF THE SETTLEMENT ...................................................... 3
    9.    Do I need to do anything to get a payment or the credit reporting benefit ........... 3
    10.    Do I need to do anything to have my outstanding debt eliminated? ..................... 3
    11.    When would I get my payment? .......................................................... 4
    12.    What am I giving up to get a payment or stay in the Class? ................... 4

EXCLUDING YOURSELF FROM THE SETTLEMENT .............................................................. 4
    13.    How do I get out of the settlement? ..................................................... 4
    14.    If I don't exclude myself, can I sue the Trusts for the same thing later? ............. 5
    15.    If I exclude myself, can I get money from this settlement? ..................... 5

THE LAWYERS REPRESENTING YOU ................................................................................ 5
    16.    Do I have a lawyer in this case? .......................................................... 5
    17.    How will the lawyers be paid? ............................................................ 5

OBJECTING TO THE SETTLEMENT ................................................................................... 5
    18.    How do I tell the Court that I don't like the settlement? ....................... 5
    19.    What's the difference between objecting and excluding? ........................ 6

THE COURT'S FAIRNESS HEARING .................................................................................. 6
    20.    When and where will the Court decide whether to approve the settlement? .......... 6
    21.    Do I have to come to the hearing? ...................................................... 6
    22.    May I speak at the hearing? ................................................................ 6

IF YOU DO NOTHING ...................................................................................................... 7
    23.    What happens if I do nothing at all? .................................................... 7

GETTING MORE INFORMATION ....................................................................................... 7
    24.    Are there more details about the settlement? ........................................ 7



### BASIC INFORMATION

1. **Why did I get this notice package?**

The Court approved this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves it and after appeals, if any, are resolved, the Settlement Administrator will make the payments the settlement allows.

The Court in charge of the case is the United States District Court for the Eastern District of Pennsylvania, and the case is known as *Mccalvin v. Condor Holdco Securitization Trust*, No. 17-cv-1350. The people suing – Tara Mccalvin, Ghani Smith, Holli Wise, and James C. Deviese and Theresa Deviese – are called the Plaintiffs (or the "Class Representatives"), and the companies being sued—Condor Holdco Securitization Trust, Condor Assetco Securitization Trust, and Condor Recovery Securitization Trust—are called the Defendants, or the "Trusts."

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible, and how to get them.

The Trusts' records reflect that you and/or a co-borrower on your car loan received one or more notices from the Trusts after your car was repossessed. The Trusts' use of these notices forms the basis for this lawsuit.

2. **What is this lawsuit about?**

The lawsuit claims that the Trusts violated the Uniform Commercial Code by failing to send borrowers proper notice of their rights after repossessing their cars. Plaintiffs say the Trusts violated the Uniform Commercial Code because a) their notice did not state the specific method of disposition (whether a public or private auction); or b) their notice did not list the time and place of any public sale of the vehicle, if any, for such an auction; or c) their notice did not adequately describe the secured party; or d) the Trusts sent no notice at all. The Trusts deny that their disclosures violated any law, and the Trusts say they satisfied all legal requirements. The Trusts also say that many of the members of the Class owe the Trusts money for balances still allegedly due after the sale of their vehicles at auction.

3. **Why is this a class action?**

In a class action, one or more people called Class Representatives sue on behalf of all people who have similar claims. All these people are "Class Members," and grouped together are a "Class." One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. The Trusts have challenged whether this case should proceed as a class action but have agreed not to oppose certification of a class for settlement purposes only.

4. **Why is there a settlement?**

Plaintiffs believe the Class might have won more money than the settlement amount had the case proceeded, but substantial delays and risks would have occurred, including the risk of the suit not

being certified as a class. The Trusts believe that the claims in the case lack merit, and that the Plaintiffs may have recovered nothing if the case had proceeded. Both sides, with the assistance of a retired federal judge serving as a mediator, agreed to a settlement. That way, they avoid the cost of further litigation and appeal, and the people affected will get money and other settlement benefits much sooner. The Class Representatives and the class attorneys think the settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT

5.  How do I know that I am part of the settlement?

If you received this Notice in the mail, the Trusts' records reflect that you are part of the Class. The Court has made a preliminary determination certifying the following group as a Class:

> All persons in the United States who (a) financed a vehicle primarily for consumer use, whose consumer loan contract or installment sales contract was assigned to the Trusts or one of them; (b) from whom the Trusts, or one of them or their designee, repossessed the financed vehicle, or ordered it repossessed; (c) who were sent a Notice of Our Plan to Sell Property from the Trusts or similar document which failed to: (1) state the method of disposition, *viz.*, whether a public auction or private sale; or (2) list the time and place of any public sale of the vehicle; or, (3) describe the name and address of the secured party; or (4) state that the borrower has the right to an accounting; (d) or, who were sent no notice at all; (e) from November 23, 2015 through March 28, 2018.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

6.  What does the settlement provide for me?

- Cash Component: The Trusts have agreed to create a Settlement Fund of $5,700,000. Approved expenses and Class Counsel fees will be paid from that fund. You will receive an equal share of the total amount of Settlement Funds then available. There are approximately 2,890 loan accounts and about 3,245 Class Members, including co-borrowers. If fees and expenses are allowed as requested, it is expected that your cash payment will be approximately $1,150, unless there were co-borrowers on your loan, in which case you will receive a portion of this amount.

- Credit Report Correction: If the Trusts have credit-reported your loan or repossession, they will request that your credit report be updated to remove any "tradeline" – any reference to the auto loan. Details about how and when this will be done, and limits on the Trusts' obligation to correct, are spelled out in the Class Action Settlement Agreement.

- Forgiveness of Deficiency Balance: If you have been advised by the Trusts that you still owed money after the sale of your repossessed vehicle, that balance is called a "Deficiency Balance." Unless you elect otherwise, the Trusts will forgive and eliminate any Deficiency Balance on your vehicle loan. The average Deficiency Balance claimed due is around $8,046. Yours could be more or less than this amount. NOTE: *see* Tax Implications in Section 8 below. You can choose not to receive debt forgiveness by submitting the enclosed Election Not to Accept Deficiency Balance Debt Forgiveness.



- Any money remaining from uncashed or undistributable checks will, subject to Court approval, be paid to non-profit consumer organizations.

7.  What is the debt forgiveness benefit?

As part of the Settlement, the Trusts will forgive any outstanding debt related to your repossessed vehicle.

- Example: John owed $10,000 on his repossessed vehicle and the Trusts paid $400 in repossession/towing fees. His vehicle sold for $6,000 at auction. John's Auto Loan Deficiency would be $4,400.

   Calculation: $10,400 – $6,000 (amount from sale of vehicle) = $4,400 deficiency.

If you do not want your debt forgiven, submit the attached Election Not to Accept Deficiency Balance Debt Forgiveness Form. (See Section #10 below). Otherwise, the Trusts will automatically forgive and eliminate your Auto Loan Deficiency. If you do not know if you have any deficiency, you can call Class Counsel at 1-888-668-1225.

TAX IMPLICATIONS

| 8. | Tax Implications |
|---|---|

This settlement has potential tax implications for you. The Settlement Administrator will issue IRS 1099 forms for cash payments.

If you accept the Deficiency Balance Forgiveness, the Trusts may issue to you and to the IRS a 1099C form for the amount of the Deficiency Balance forgiven. This could result in your having to declare income in that amount on your next tax return and pay taxes on all or some of that amount. You should consult your tax advisor to help decide if accepting the Deficiency Forgiveness is right for you.

HOW YOU GET THE BENEFITS OF THE SETTLEMENT

9.  Do I need to do anything to get a payment or the credit reporting benefit

No, you do not need to do anything further. You will get a payment and the credit reporting benefit automatically, after court approval of the Settlement.

10.  Do I need to do anything to have my outstanding debt eliminated?

No. Unless you submit an Election Not to Accept Deficiency Balance Debt Forgiveness Form, any outstanding debt related to the financing of your repossessed vehicle will be automatically eliminated (unless you reinstated the loan and got your car back after the repossession). If you **do not want** your outstanding debt to be forgiven, fill out the Election Form and mail it postmarked no later than _____, **2018** to:

-3-



Mccalvin v. Condor Trusts Settlement
American Legal Claim Services, LLC
P.O. Box 23369
Jacksonville, FL 32241-3369

**11. When would I get my payment?**

The Court will hold a hearing on _____, 2018 at _____ ___m. in Courtroom _____, James A. Byrne U.S. Courthouse, Philadelphia, Pennsylvania to decide whether to approve the settlement. You do not need to appear at the hearing to be a part of the settlement and to receive a payment if the Court approves the settlement. If the Court approves the settlement, there may be an appeal of that decision. It is always uncertain whether there will be an appeal and if so, when it will be resolved. Please be patient.

**12. What am I giving up to get a payment or stay in the Class?**

Unless you exclude yourself, you will stay in the Class, and that means that you cannot sue, continue to sue, or be part of any other lawsuit against the Trusts for any claims of any kind, whether known or unknown, that were or could have been raised in the Litigation or that relate to your vehicle loan with the Condor Trusts or the repossession of your vehicle. It also means that the Court's orders will apply to you and legally bind you. Unless you "opt out" or exclude yourself from this case, you will automatically be deemed to have agreed to a "Release of Claims" which describes exactly the legal claims that you give up if you remain in the Class.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment or other benefits from this settlement but you want to keep the right to sue or continue to sue the Trusts on your own about any of the subjects or issues listed in the paragraph above, then you must take steps to get out. This is called excluding yourself – sometimes referred to as "opting out" of the Class.

**13. How do I exclude myself to get out of the settlement?**

To exclude yourself from the settlement, you must send a letter to the Settlement Administrator by mail (first-class postage pre-paid) saying that you, as well as anyone else who signed your loan contract, want to be excluded from the settlement in *Mccalvin v. Condor Holdco Securitization Trust*, No. 17-cv-1350. Be sure to include your name, address, email (if available), telephone number, and signature. Mail your exclusion request postmarked no later than _____, 2018 to the address below.

**Settlement Administrator**
Mccalvin v. Condor Trusts
Settlement
c/o American Legal Claim
Services, LLC
P.O. Box 23369
Jacksonville, FL 32241-3369

-4-

14. If I don't exclude myself, can I sue the Trusts for the same thing later?

No. Unless you exclude yourself, you give up any right to sue the Trusts for the claims that this settlement resolves. If you have a pending lawsuit, speak to your lawyer in that case immediately. You must exclude yourself from the Class to continue your own lawsuit.

15. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, you will not receive any money from this lawsuit or settlement, nor will you receive a credit report deletion, nor will you receive a release of any Deficiency Balance.

### THE LAWYERS REPRESENTING YOU

16. Do I have a lawyer in this case?

The Court has appointed the law firm Flitter Milz, P.C. of Narberth, PA; the law firm Klafter Olsen & Lesser LLP of Rye Brook, NY; the Murphy Law Firm of Ft. Lauderdale, FL; and The Indiana Consumer Law Group of Fishers, IN to represent you and other Class Members. These lawyers are called Class Counsel. You will not be charged individually for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

17. How will the lawyers be paid?

Class Counsel will ask the Court to approve a payment out of the settlement fund in an amount not to exceed $2,280,000 for fees and up to $32,500 for reimbursement of litigation expenses. The fees would pay Class Counsel for the time they spent investigating the facts, filing the case, litigating the case, negotiating the settlement, filing legal papers with the Court, and overseeing future implementation of the settlement, including fielding inquiries from Class Members. Class Counsel has not been paid for their time or services since this case was originally filed in early 2017. The Court could award less than these amounts.

### OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the settlement or some part of it.

18. How do I tell the Court that I don't like the settlement?

If you are a Class Member, you can object to the settlement if you do not like any part of it. You should state why you think the Court should not approve the settlement. The Court will consider your views. To object, you must file an objection, or send a letter saying you object to the settlement in *Mecalvin v. Condor Holdco Securitization Trust*, No. 17-cv-1350. Please be sure to include your name, address, email address (if available), telephone number, signature, and the reasons you object to the settlement. Mail the objection to the three places listed below, postmarked no later than _____, 2018, and file electronically or by mail with the Clerk's Office, Room 2609, James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106.

-5-



| Settlement Administrator | Class Co-Counsel | Trusts' Counsel |
|---|---|---|
| Condor Trusts Repo Settlement c/o American Legal Claim Services, LLC P.O. Box 23369 Jacksonville, FL 32241-3369 | Cary L. Flitter, Esq. FLITTER MILZ, P.C. 450 N. Narberth Avenue Suite 101 Narberth, PA 19072 | Eric S. Mattson, Esq. SIDLEY AUSTIN LLP One South Dearborn St. Chicago, IL 60603 |

19. What's the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the settlement, and that you, for that reason, want the settlement not to be approved. You can object only if you stay in the Class. Excluding yourself means you don't want to be part of the Class. If you exclude yourself, you cannot object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and ask to speak, but you do not have to in order to be included in the settlement or obtain its benefits.

20. When and where will the Court decide whether to approve the settlement?

The Court is scheduled to hold a Fairness Hearing on _____, 2018 at _____ __.M. in Courtroom _____ at James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate and whether it can proceed as a class action settlement. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court may also determine the Class Representative incentive awards and Class Counsel fees and litigation expenses. Following the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

21. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. But you are welcome to come at your own expense. If you file an objection, you don't have to come to Court to talk about it, but you may. As long as you properly mailed (or electronically filed) your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, if you wish.

22. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter stating that it is your "Notice of Intention to Appear in *Mccalvin v. Condor Holdco Securitization Trust*, No. 17-cv-1350." Your Notice of Intention to Appear must be filed or mailed so as to be postmarked no later than _____, 2018 and be filed with or sent to the Clerk's



Office and the lawyers listed in Section 18 above.  You cannot speak at the hearing if you exclude yourself from the settlement.

### IF YOU DO NOTHING

23. What happens if I do nothing at all?

If you do nothing, you will be a part of this settlement (if the Court approves it) and will receive a settlement payment, forgiveness of your Deficiency Balance (if any), and credit reporting relief. If you do not want your Deficiency Balance forgiven you must elect in writing by returning the enclosed form.  If you do not exclude yourself, you give up the right to bring your own lawsuit.

### GETTING MORE INFORMATION

24. Are there more details about the settlement?

This notice summarizes the proposed settlement.  The pleadings and other records in this litigation, including a copy of the Settlement Agreement, may be examined at any time during regular office hours at the Office of the Clerk, James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA.

You may also call or write to the following:

**Condor Trusts Settlement**
**c/o American Legal Claim Services, LLC**
**P.O. Box 23369**
**Jacksonville, FL 32241-3369**

**Or**

**Class Counsel**
**FLITTER MILZ, P.C.**
**450 N. Narberth Avenue, Suite 101**
**Narberth, PA 19072**
**1-888-668-1225**

Please **do not** call the Court, the Trusts, or the Trusts' lawyers.

Dated _____, 2018                    BY THE COURT

_____

-7-



# EXHIBIT "D"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TARA MCCALVIN, GHANI SMITH, HOLLI WISE, JAMES C. DEVIESE and THERESA DEVIESE<br><br>*on behalf of themselves and all others similarly situated*<br>Plaintiffs,<br><br>vs.<br><br>CONDOR HOLDCO SECURITIZATION TRUST, CONDOR ASSETCO SECURITIZATION TRUST & CONDOR RECOVERY SECURITIZATION TRUST,<br>Defendants. | CLASS ACTION<br><br>CIVIL ACTION NO. 17-cv-01350(TJS) |

## ORDER GRANTING CLASS CERTIFICATION, FINAL APPROVAL OF CLASS SETTLEMENT, AND FOR JUDGMENT AND DISMISSAL

WHEREAS, Tara Mccalvin, Ghani Smith, Holli Wise, James C. Deviese, and Theresa Deviese (the "Class Representatives" or "Plaintiffs"), on behalf of themselves and the Class Members, and Condor HoldCo Securitization Trust, Condor AssetCo Securitization Trust, and Condor Recovery Securitization Trust (the "Condor Trusts" or "Defendants"), Defendants in the above-captioned action (the "Action"), have entered into, and filed with the Court, a Class Action Settlement Agreement and Release (the "Settlement Agreement");

WHEREAS, the Court on _____, 2018, entered an order preliminarily approving the class settlement, making a preliminary determination on class certification, and approving the issuance of notice ("Preliminary Approval Order") (Doc. No. _____);

WHEREAS, on _____, 2018, beginning at _____ o'clock _____ in Courtroom _____, James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, Pennsylvania, this Court held a hearing to consider, among other things: (i) whether the settlement

reflected in the Settlement Agreement should be approved as fair, reasonable, adequate, and in the best interests of Class Members; (ii) whether final judgment should be entered dismissing the claims of the Class Members with prejudice and on the merits, as required by the Settlement Agreement; (iii) Plaintiffs' application for Class Representative service awards; and (iv) Plaintiffs' request for an award of Class Counsel fees and expenses from the common fund;

WHEREAS, based on the foregoing, having heard the statements of counsel for the Parties and of such persons who chose to appear at the final approval hearing, having considered the records and proceedings in the action, including specifically the Settlement Agreement and the exhibits appended to it, the memoranda and other papers filed in support of final approval, and any objections or comments relating to objections to the proposed settlement;

THE COURT HEREBY FINDS AND ORDERS:

1. **Notice to the Class**:  Notice to the Class has been provided by the Settlement Administrator pursuant to this Court's Preliminary Approval Order, as attested to by the affidavit of the Settlement Administrator.  The notice given to members of the Class by first class mail constituted due and sufficient notice of the settlement and the matters set forth in the notices to all persons entitled to receive notice, and fully satisfies the requirements of due process and Fed. R. Civ. P. 23(c) and 23(e).

2. **Notice Pursuant to the Class Action Fairness Act**: Defendants have served the CAFA Notice of Proposed Settlement and have complied with their obligations under 28 U.S.C. § 1715.

3. **Settlement Approved**:  The proposed settlement set forth in the Settlement Agreement, a copy of which was filed with the Motion for Preliminary Approval/Determination, is fair, reasonable, adequate and in the best interests of the Class.  The terms in this order shall be



interpreted in accordance with the definitions in the Settlement Agreement. All aspects of the Settlement Agreement are approved. The Class Representatives' service awards are approved.

4. **Class Counsel Fees and Expenses**. The Court has reviewed the application for Class Counsel fees and expenses, and the documentation submitted in support. Consistent with the criteria set forth in Fed. R. Civ. P. 23(h) and established law providing for payment of reasonable counsel fees and expenses to Class Counsel from a common fund created for the benefit of the Class, the Court finds that the settlement provides for Defendants to pay $5,700,000 to a Settlement Fund, forgive approximately $14,000,000 in post-repossession deficiency claims, and cause the removal of negative credit reporting on Class Members' credit reports, all of which adds considerable value to the settlement.

The request for award of fees to Class Counsel in the sum of $_____ [not to exceed $2,280,000] is approved as fair and reasonable in light of all relevant factors. Litigation expenses of Class Counsel have been adequately documented and appear reasonable and necessary for effective prosecution of the case. Expenses are approved in the requested sum of $_____ [not to exceed $32,500]. These sums shall be paid from the Settlement Fund. Class Counsel may allocate fees and allowed litigation expenses among themselves as they agree or have agreed.

5. **Dismissal and Related Matters**:

a. The claims of all Class Members, except those who timely excluded themselves from the Class pursuant to Paragraph 4.03 of the Settlement Agreement, are hereby dismissed with prejudice, on the merits and without costs to any party. A list of Class Members who excluded themselves, if any, was submitted with the Motion for Final Approval.

b. Class Representatives, on their own behalf and on behalf of each Class Member, by operation of the release in the Settlement Agreement and this judgment, have fully,



finally, and forever released and discharged with prejudice the Released Persons of and from all Settled Claims, and shall be forever barred and enjoined from instituting or further prosecuting, in any forum, including any state or federal court or arbitration, administrative or other proceeding, any Settled Claim.

      c.     The Class Representatives, on their own behalf and on behalf of each Class Member, have acknowledged that they are aware that he or she may later discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the Release, but that it is his or her intention to, and he or she is hereby deemed, upon the Effective Date of the Settlement Agreement, to fully, finally and forever settle and release the Released Persons from all Settled Claims, known or unknown, suspected or unsuspected, contingent or matured, which now exist, may hereafter exist, or may heretofore have existed, without regard to the subsequent discovery or existence of such different or additional facts.

      d.     The Class Representatives, on their own behalf and on behalf of each Class Member, have acknowledged and agreed that they cannot raise any Settled Claim as a defense to any action brought by Defendants against them in connection with an action seeking repayment of an obligation other than an obligation waived under the Settlement Agreement.

      e.     On the Effective Date, by operation of law and pursuant to the Settlement Agreement, the Trusts shall be deemed to have released and discharged with prejudice all Class Members with a Deficiency Balance, except those who submitted an Election Form declining the forgiveness, including the Class Representatives, their agents, attorneys, heirs and assigns, from any and all claims, known or unknown, that they have had in the past, or now have, or may have in the future against the Class Member arising from or related to the motor vehicle installment sale contracts to which the Class Members are signatories. The Trusts and their agents shall not further

4

attempt to collect such monies from Class Members, except those who elected to waive debt forgiveness. The release in this subparagraph shall not apply to any Class Member who reinstated their contract or reclaimed or obtained the return of their vehicle following repossession.

        f.     In light of the notice given to the Class Members, the Plaintiffs and all Class Members who did not exclude themselves shall be bound by the Settlement Agreement and all of their Settled Claims shall be dismissed with prejudice and released.

        g.     Class Representative service awards are allowed in the sum of $_____ [not to exceed $5,000] each from the Settlement Fund to Ms. Mccalvin, to Mr. Smith, to Ms. Wise, and to Mr. and Mrs. Deviese, in the aggregate amount of $_____ [not to exceed $20,000].

6.     *Cy Pres*. The Court approves as *cy pres* beneficiaries National Legal Aid and Defenders Association, Washington, D.C., Community Legal Services of Philadelphia, PA, and the National Consumer Law Center, Boston, MA. Any residual funds remaining after distribution of the Settlement Fund to Class Members, payment of Class Counsel fees and litigation expenses, administration expenses, and Class Representative service awards shall be distributed by the Settlement Administrator in equal one-third shares to these beneficiaries for the uses specified in the Settlement Agreement.

7.     **Continuing Jurisdiction**. Consummation of the settlement shall proceed as described in the Settlement Agreement and, without disturbing the final and appealable nature of this order and judgment, the Court hereby specifically retains jurisdiction of this matter, to the extent permitted by law, to resolve any disputes which may arise in the implementation of the Settlement Agreement or the implementation of this Final Judgment and Order. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994). The Court retains continuing jurisdiction for

5



purposes of supervising the implementation of the Settlement Agreement and supervising the distribution and allocation of the Settlement Fund.

Final judgment is entered. This judgment is final and appealable. The Clerk of the Court shall mark this case as closed.

BY THE COURT:

_____
U.S.D.J.

6

