IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TARA MCCALVIN, GHANI SMITH, HOLLI WISE, JAMES C. DEVIESE and TERESA DEVIESE, On Behalf of Themselves and All Others Similarly Situated | : : : : : : : | CIVIL ACTION |
| v. | : : | |
| CONDOR HOLDCO SECURITIZATION TRUST, CONDOR ASSETCO SECURITIZATION TRUST and CONDOR RECOVERY SECURITIZATION TRUST | : : : : | NO. 17-1350 |

### FINDINGS OF FACT
### AND
### CONCLUSIONS OF LAW

**NOW**, this 6th day of November, 2018, upon consideration of the Plaintiffs' Motion for Final Approval of Class Action Settlement (Document No. 92) and after hearings on August 7, 2018 and November 5, 2018, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On August 8, 2018, the proposed settlement was preliminarily approved.

2. The Settlement Class as defined in the Order of August 8, 2018, includes all persons in the United States (a) who financed a vehicle primarily for consumer use, whose consumer loan contract or installment sales contract was assigned to Condor HoldCo Securitization Trust, Condor AssetCo Securitization Trust, and Condor Recovery Securitization Trust (the "Trusts") or one of them; (b) from whom the Trusts, or one of them or their designee, repossessed the financed vehicle, or ordered it repossessed;

and (c) who, between November 23, 2015 and March 28, 2018, were sent a Notice of Our Plan to Sell Property from the Trusts or similar document which did not state whether the vehicle would be disposed of at a public auction or private sale, or list the time and place of any public sale of the vehicle, or describe the precise legal name and address of the secured party, or state that the borrower had the right to an accounting; or (d) were sent no notice at all.

3. Tara Mccalvin, Ghani Smith, Holli Wise, James C. Deviese, and Teresa Deviese are the approved Class Representatives.

4. Cary L. Flitter, Esquire, Andrew Milz, Esquire, and Jody Lopez-Jacobs, Esquire, and Flitter Milz, P.C., Seth R. Lesser, Esquire and Michael H. Reed, Esquire, and Klafter Olsen & Lesser LLP, Robert Murphy, Esquire, and the Murphy Law Firm, and Robert E. Duff, Esquire, and the Indiana Consumer Law Group have acted as Class Counsel.

5. Notice of the proposed settlement was provided to class members in compliance with the August 8, 2018 Order by American Legal Claim Services, LLC ("ALCS"), which was appointed Settlement Administrator.

6. Notice of the November 5, 2018 hearing to determine: (a) whether this action satisfies the criteria for class certification set forth in Fed. R. Civ. P. 23(a) and (b); (b) whether the settlement of this action on the terms and conditions set forth in the Settlement Agreement (Document No. 82-2) should be finally approved as fair, reasonable and adequate; (c) whether final approval should be granted; (d) the amount of attorneys' fees and expenses to be awarded to Class Counsel; and (e) whether a final

order and judgment should be entered dismissing the claims of the Settlement Class with prejudice, was mailed to all class members.

7. There are approximately 2,890 secured obligations[1] and approximately 3,245 class members.

8. Class members were given the option of excluding themselves from the class by completing, signing and mailing a notice requesting exclusion to the Settlement Administrator no later than October 9, 2018.

9. One class member has requested exclusion from the Settlement Class.

10. The deadline for serving written objections to the settlement and/or to the request by Class Counsel for an award of attorneys' fees and out-of-pocket expenses was October 9, 2018.

11. No class member has objected to the proposed settlement or the award of attorneys' fees and expenses.

12. Investigation, substantial discovery, briefing on a motion for class certification and extensive settlement negotiations have taken place at substantial expense to the parties.

13. If this settlement is not approved, there will be expensive future litigation.

14. On November 5, 2018, pursuant to Fed. R. Civ. P. 23(e), a final approval hearing was held.

15. The only persons appearing at the November 5, 2018 hearing were Class Counsel and defense counsel.

---

[1] The term "secured obligation" refers to a single vehicle loan or finance where the vehicle was repossessed. There is only one recovery even if more than one repossession of the same car, and the recovery will be divided if there are co-obligors.

**The Settlement**

16. The settlement terms were reached after Class Counsel: (a) drafted and filed a putative class action complaint and amended it three times; (b) engaged in substantial discovery, including reviewing and cataloguing thousands of documents and taking depositions of representatives of the defendants and defending depositions of class representatives; (c) briefed a motion for class certification; and (d) engaged in extensive settlement negotiations, including participating in two days of mediation. All of these actions resulted in an understanding of the strengths and weaknesses of the claims and the defendants' potential defenses, enabling counsel to make an informed decision that the proposed settlement is fair, adequate and reasonable, and in the best interests of the settlement class.

17. Settlement negotiations took place over a four-month period in arms' length discussions and with the participation of a mediator.

18. The Settlement Agreement, which was entered into by the parties on June 18, 2018, was the product of careful and informed analysis by all parties, taking into consideration the respective strengths and weaknesses of the parties' positions.

19. The parties have been and are represented by counsel experienced in class actions, complex commercial matters and consumer litigation in the federal courts.

20. The defendants have challenged the claims on legal grounds that raise a potential finding of no liability.

21. The parties genuinely believe there are inherent risks in proceeding to trial.

22. Settlement will avoid delay in realizing a benefit for the affected class members, will avoid unnecessary litigation costs and will eliminate uncertainty.

23. The absence of objections to the settlement demonstrates support for the approval of this settlement as fair and reasonable.

24. The settlement provides significant relief, which directly responds to the challenged conduct and provides relief to a large group of people with modest individual claims who could not practically seek redress on an individual basis.

25. The Settlement Agreement provides that the Trusts will deposit $5,700,000.00 ("Settlement Funds") into a settlement fund at PNC Bank, N.A.

26. The Settlement Funds will be used to pay:

    a. costs of settlement administration in the amount of $37,500.00;

    b. class representative awards in the amount of $20,000.00;

    c. counsel fees in an amount up to $2,280,000.00 and litigation expenses in the amount of $32,500.00.

27. The remaining balance of $3,330,000.00 will be distributed to Class Members.

28. With 2,890 secured obligations, the amount distributed will be $1,152.00 per loan.

29. The Settlement Agreement requires the Trusts to advise all consumer reporting agencies to which it reports to delete the Trusts' tradelines on each Class Member's credit report.

30. The Settlement Agreement also requires the Trusts to forgive the loans by waiving and eliminating deficiency claims on Class Members' vehicle loans, totaling over $14,000,000.00, unless the Class Member does not desire this relief.[2]

31. The Settlement Agreement provides that in the event there are any uncashed disbursement checks, those funds are to be disbursed as a *cy pres* distribution to Community Legal Services of Philadelphia, Pennsylvania, and these funds are to be used for consumer credit education and counseling, foreclosure prevention, and advocacy on behalf of low-income consumers.

32. The Settlement Agreement does not grant preferential treatment to the Class Representatives or segments of the class.

**Class Counsel's Request for Award of Attorneys' Fees
and Expenses and for Class Representative Service Award**

33. Class Counsel undertook prosecution of this matter on a contingent basis and incurred expenses in its prosecution.

34. Class Counsel has applied for an award of attorneys' fees in the amount of $2,280,000.00 and reimbursement of expenses in the amount of $32,500.00.

35. Notice of Class Counsel's intention to apply for an attorneys' fees and expenses award in this amount was provided to all class members in the Notice of the proposed settlement.

36. There have been no objections to the requested award of attorneys' fees and expenses.

---

[2] Only four class members elected not to have any deficiency balance forgiven. *See* Decl. of ALCS (Doc. No. 92-5), ¶ 13.

37. The Class Representatives approve of Class Counsel's request for attorneys' fees and expenses.

38. The defendants do not oppose Class Counsel's request for attorneys' fees and expenses.

39. At substantial expense, Class Counsel conducted a thorough investigation of the defendants' practices, engaged in extensive discovery, briefed a motion for class certification, and participated in extensive settlement negotiations.

40. The total cash value of the Settlement is at least $19,700,000.00, comprised of payment into a Settlement Fund of $5,700,000.00 and the elimination of deficiency balances on Class Members' loans totaling more than $14,000,000.00.

41. The $2,280,000.00 counsel fee award requested represents 11.5% of the value of the Settlement.

42. The requested counsel fee is below fee awards commonly awarded in similar cases, which range from 19% to 45% of the settlement fund.[3]

43. The counsel fees requested are reasonable.

44. The out-of-pocket expenses incurred were reasonable and necessary.

45. Using the lodestar method as a cross-check on the reasonableness of the requested fees, Class Counsel's lodestar is $873,649.00, which reflects 1560 hours of attorney and paralegal time, and expenses of $33,666.00, for a total of $907,315.00.

46. Given the nature of the services provided, Class Counsel's experience in consumer class action cases and the rates of other lawyers in the community with similar skills and experience, Class Counsel's hourly rate is reasonable.

---

[3] *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001) (citation omitted).

47. The number of hours expended by Class Counsel was not excessive or redundant, and the work was properly allocated among attorneys and paralegals of different skill and experience levels to reduce costs.

48. Class Counsel's requested award for attorneys' fees and expenses of $907,315 results in a multiplier of 2.5.

49. The 2.5 multiplier is reasonable.[4]

50. Class Counsel has applied for a total of $20,000.00 in service awards to the Class Representatives, for plaintiffs Mccalvin, Smith and Wise to each receive a $5,000.00 award, and for plaintiffs James and Teresa Deviese to each receive a $2,500.00 award.

51. Class Counsel's intention to apply for class representative service awards was provided to all class members in the notice of the proposed settlement.

52. There have been no objections to the requested service awards.

53. The service awards requested are reasonable.

## CONCLUSIONS OF LAW

### Final Approval of the Settlement

1. The settlement of a class action requires Court approval after notice to all members of the class. *See* Fed. R. Civ. P. 23(e).

2. The settlement comports with Rules 23(a) and 23(b)(3) in all respects.

3. The nine factors to be considered in assessing the fairness of a class action settlement are: "(1) the complexity, expense and likely duration of the litigation; (2) the

---

[4] *See Cendant Corp. PRIDES*, 243 F.3d at 742 (quoting *In re Prudential*, 148 F.3d 283, 341 (3d Cir. 1998) ("'Multipliers ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'")).

reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through the trial; (7) the ability of defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017) (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)); *see also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 319-20 (3d Cir. 2011).

4. In light of these factors, the settlement is fair, reasonable and adequate.

**Approval of Class Counsel's Request for Award of Attorneys' Fees and Expenses**

5. An award for attorneys' fees and expenses in the settlement of a class action requires court approval after notice to all class members in a reasonable manner. *See* Fed. R. Civ. P. 23(h).

6. Notice of Class Counsel's intention to apply for an award of attorneys' fees and expenses has been provided to all persons in the class in a reasonable manner and satisfies the requirements of Federal Rule of Civil Procedure 23(h)(1).

7. The court may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

8. To evaluate what is an appropriate attorneys' fee in a class action, courts generally apply either the lodestar method or the percentage-of-recovery method. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 279-80 (3d Cir. 2009).

9. Attorneys who create a settlement fund of benefits for class members by virtue of their efforts are entitled to be compensated for their services from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

10. The percentage of recovery method "is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *Ins. Brokerage*, 579 F.3d at 280 (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005)).

11. Regardless of the method chosen, it is prudent to use a second method of fee approval to cross-check the initial fee calculation. *Rite Aid*, 396 F.3d at 300; *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 & n.40 (3d Cir. 1995).

12. In evaluating a counsel fee request using the percentage-of-recovery method, the following factors should be considered: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by Class Counsel; and (7) awards in similar cases. *See In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 194-95 (3d Cir. 2000)).

13. The lodestar method calculates fees by multiplying the number of hours reasonably worked by an appropriate hourly rate based on the given geographical area, the nature of the services provided, and the experience of the attorneys. *Rite Aid*, 396

F.3d at 305.  The number of hours expended should not be excessive or redundant, and should be appropriately allocated among attorneys and other staff with the proper skill level to reduce costs.  *Hensley v. Eckerhart*, 461 U.S. 433-34 (1983).

14. After determining the lodestar, we calculate the "multiplier" by dividing the proposed fee award by the resulting lodestar.

15. Applying both the percentage-of-recovery and lodestar methods, Class Counsel's request for an award of $2,280,000.00 for attorneys' fees and $32,500.00 for out-of-pocket expenses is fair and reasonable.

                                                     /s/ Timothy J. Savage
                                                   TIMOTHY J. SAVAGE, J.